NICK D. KAPERONIS AND PIEDMONT ENTERPRISES, INC. v. UNDERWRITERS AT LLOYD'S, LONDON; INTERNATIONAL GENERAL AGENCY, LTD.; CHAMPION CORPORATION, UNDER-WRITERS; HORACE M. JOHNSON & CO., INC.; AND HORACE M. JOHNSON, INDIVIDUALLY

No. 7426SC281

(Filed 19 March 1975)

1. Insurance § 2— insurance agent — negligent failure to procure insurance

   If an insurance agent or broker undertakes to procure for another insurance against a designated risk, the law imposes upon him the duty to use reasonable skill, care and diligence to procure such insurance and holds him liable to the proposed insured for loss proximately caused by his negligent failure to do so; furthermore, if the agent or broker is unable to procure the insurance he has undertaken to provide, it is his duty to give timely notice to the proposed insured in order that he may have the opportunity to take the necessary steps to protect himself otherwise.

2. Insurance § 2— agent's failure to procure valid insurance — negligence in failure to discover fraud

   In an action to recover damages for personal property destroyed in a fire in plaintiff's nightclub which was purportedly covered by a fire insurance policy obtained for plaintiff by defendants through a general agency in Missouri and its successor located in Florida, which policy was purportedly written with Underwriters at Lloyd's, London,

the evidence was sufficient for the jury to find that defendants under-
took to procure insurance for plaintiffs and that defendants were neg-
ligent in allowing themselves to be misled by the fraudulent acts of
others or in failing to make timely discovery of the fraud where it
tended to show that neither the Missouri agency nor its Florida suc-
cessor was authorized to represent Underwriters at Lloyd's, London,
the principals in those agencies have been indicted for fraud arising
out of their insurance operations, the individual defendant learned of
the Missouri agency through an advertisement in an insurance in-
dustry periodical but never attempted to ascertain if the agency or its
successor was licensed to engage in the insurance business in Missouri
or Florida, defendants knew of a U. S. representative of Underwriters
at Lloyd's, London, but did not approach him for the purpose of placing
plaintiff's risk, defendant never saw any authorization from Under-
writers at Lloyd's, London, authorizing the Missouri agency to bind
them with regard to this risk and made no inquiry concerning the
authority of the agency to act on behalf of the Underwriters at
Lloyd's, London, defendants never received any policy of insurance
covering plaintiff's nightclub, and the individual defendant signed
certificates of insurance on forms supplied by the Missouri agency
without having received any authorization or commitment or any
acknowledgment or binder from Underwriters at Lloyd's London;
defendant's evidence that the custom and practice in the insurance
business is not to make investigations of firms advertised in the insur-
ance industry periodical and that defendants acted in accordance with
the general practices in the insurance industry would not preclude
the jury from finding the defendants negligent.

3. **Insurance § 2; Trial § 40— two defendants — instructions and issues
requiring same finding as to both defendants**

In an action to recover for negligent failure of the corporate
defendant and the individual defendant, the corporation's president,
to procure insurance for plaintiff, the court erred in giving the jury
instructions and submitting issues which required the jury to find
against both defendants if it found against either where the evidence
would have permitted finding against one and not against the other.

APPEAL by plaintiff, Nick D. Kaperonis, and conditional
appeal by defendants, Horace M. Johnson & Co., Inc., and Hor-
ace M. Johnson, individually, from *Ervin, Judge.* Judgment
entered 25 October 1973 in Superior Court, MECKLENBURG
County. Heard in the Court of Appeals 12 March 1974.

This is a civil action to recover damages alleged to have
been sustained by plaintiffs as result of a fire which occurred
in Charlotte on 23 May 1970 in premises occupied by the night-
club known as "The Purple Penguin." Certain personal property
belonging to the individual plaintiff, Nick D. Kaperonis, was
located on the premises and was destroyed in the fire. (At the
trial no ownership in the property was shown in the corporate

plaintiff Piedmont Enterprises, Inc., and the claim of that plaintiff was eliminated from this case by peremptory instruction of the court in its charge to the jury. No question has been raised on this appeal as to that ruling.)

Plaintiffs alleged that at the time of the fire their personal property which was destroyed in the fire was purportedly covered by a fire insurance policy obtained for plaintiffs by the defendants, Horace M. Johnson & Co., Inc., and Horace M. Johnson, individually, through the defendants, International General Agency, Ltd. and Champion Corporation, Underwriters, which policy was purportedly written with Underwriters at Lloyd's, London. The defendant, Underwriters at Lloyd's, London, filed answer in which it denied that the Certificate of Insurance referred to in the complaint had been issued for or by an authorized agent, broker or representative of that defendant, and prior to the trial the motion for summary judgment of that defendant was granted and the action was dismissed as to that defendant. No appeal was noted to that judgment and no question has been raised on this appeal as to the dismissal of this action as to the Underwriters at Lloyd's, London. The defendants, International General Agency, Ltd., and Champion Corporation, Underwriters, filed no answer. At the trial, the only defendants present in defense of the action were the defendants, Horace M. Johnson & Co., Inc. and Horace M. Johnson, individually. Thus, insofar as the questions presented by this appeal are concerned, this action is one between the individual plaintiff, Nick D. Kaperonis, on the one side, and the defendants Horace M. Johnson & Co., Inc. and Horace M. Johnson, individually, on the other.

Kaperonis contended and defendants denied that defendants were negligent in failing to procure the insurance coverage which plaintiff sought and which defendants undertook to procure for him. At the close of plaintiff's evidence and again at the close of all of the evidence, defendants moved for a directed verdict. Johnson & Co., Inc. made its motions on the grounds that the evidence failed to show that the corporate defendant participated in any of the activities alleged by the plaintiff to have constituted negligence and that the evidence failed to establish facts which would constitute negligence of the corporate defendant. Johnson made his motions on the ground that as a matter of law the evidence failed to establish facts which would constitute negligence. Defendants' motions for directed verdict

were overruled, and issues were submitted to the jury and answered as follows:

"1. Did Horace M. Johnson, Individually, undertake to procure fire and extended coverage insurance for the Plaintiff, as alleged in the Complaint?

"ANSWER: Yes.

"2. Did Horace M. Johnson & Co., Inc., undertake to procure fire and extended coverage insurance for the plaintiff, as alleged in the Complaint?

"ANSWER: Yes.

"3. Did the defendants, or either of them, negligently fail to procure for the plaintiff such fire and extended coverage, as alleged in the Complaint?

"ANSWER: Yes.

"4. Did the defendants, or either of them, negligently fail to timely notify the plaintiff of the failure to procure fire and extended coverage insurance, as alleged in the Complaint?

"ANSWER: Yes.

"5. What amount of damages, if any, is the plaintiff entitled to recover of the defendants, or either of them?

"ANSWER: $50,000.00."

Upon return of the jury's verdict, defendants Johnson & Co., Inc. and Johnson, individually, each made motions for judgment notwithstanding the verdict under Rule 50(b)(1) of the Rules of Civil Procedure. The court, being of the opinion that as a matter of law the evidence failed to show actionable negligence on the part of either defendant, granted the motions and ordered that the verdict of the jury be set aside and that plaintiff recover nothing of defendants. Plaintiff moved for a new trial, which motion was denied. Defendants then made a conditional motion for a new trial in event the judgment notwithstanding the verdict should be set aside on appeal, which motion was also denied.

Plaintiff appealed from the judgment notwithstanding the verdict. Defendants also appealed, but their appeal is conditional

upon the eventuality that upon plaintiff's appeal the judgment n.o.v. should be reversed.

*Warren C. Stack for Nick D. Kaperonis, plaintiff appellant.*

*Bryant, Lipton, Bryant & Battle, P.A., by Victor S. Bryant, Jr., for Horace M. Johnson & Co., Inc. and Horace M. Johnson, individually, defendant appellees and conditional appellants.*

PARKER, Judge.

### PLAINTIFF'S APPEAL

The principal question presented by plaintiff's appeal is whether the court erred in granting defendants' motions for judgment notwithstanding the verdict. The motion for judgment n.o.v. is that judgment be entered in accordance with the movant's earlier motion for a directed verdict, notwithstanding the contrary verdict actually returned by the jury, and in passing on the motion the same standard for judging the sufficiency of the evidence to withstand the motion is to be applied as in the case of the motion for directed verdict. *Dickinson v. Pake,* 284 N.C. 576, 201 S.E. 2d 897 (1974). Thus, in passing on a motion for judgment n.o.v., the court must view the evidence in the light most favorable to the non-movant. *Summey v. Cauthen,* 283 N.C. 640, 197 S.E. 2d 549 (1973). We must, therefore, examine the evidence in the present case to determine whether, when viewed in the light most favorable to the plaintiff, it was sufficient to support a jury verdict finding that plaintiff's loss resulted from the actionable negligence of defendants or of either of them. The evidence discloses the following:

In 1959 Piedmont Enterprises, Inc., through its president and sole stockholder, Nick D. Kaperonis, leased the premises at 1426 Central Avenue, Charlotte, N. C., from Cole Properties, Inc. for a term of fifteen years. In 1968 Kaperonis and Piedmont, who were together referred to as "the Sub-lessor," subleased the premises to H. & W. Corporation, a corporation with its registered office in Fayetteville, N. C. Paragraph 18 of the sublease, as amended by a subsequent addendum, contained the following provision:

"The Sub-lessee agrees to maintain in full force and effect, and to pay promptly all premiums as they become due, fire and extended coverage insurance on the equipment in said premises in the sum of ONE HUNDRED THOU-

SAND DOLLARS ($100,000.00), if such amount can be maintained, and if such amount cannot be maintained, then the Sub-lessee agrees to maintain as much as it can up to a maximum of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) with the Sub-lessor being designated as the sole beneficiary of the proceeds of said insurance. . . . "

To obtain the required insurance coverage, H. & W. applied to Barrett and Weeks, a local insurance agency in Fayetteville. Because H. & W. conducted a nightclub in the premises which it subleased from Kaperonis and Piedmont, the location was considered a substandard risk, and Barrett and Weeks was unable to place coverage with any insurance company which it represented. Accordingly, Barrett and Weeks in turn contacted the defendant, Horace M. Johnson, to see if the required coverage could be obtained. Horace M. Johnson was a general insurance agent at Durham, N. C., whose business was primarily that of "contracting with companies to produce business for them through independent local agents or brokers or the placement of business for brokers in different companies." He was also president of Horace M. Johnson & Co., Inc., a corporation formed in 1951 under his control and supervision to carry on the business of a general insurance agency. Johnson & Co., Inc., was not licensed by the State of North Carolina, the license being in Johnson's name individually. Johnson held a license as a general agent and as a broker from the State of North Carolina, as a general agent in South Carolina, as a special agent in Virginia, and was also licensed by the Insurance Commissioner of the State of North Carolina to place business in non-admitted companies in North Carolina. In 1968 the business of Johnson and of Johnson & Co., Inc., was primarily placement and they did not sell insurance to the public as a local agent would. Local agents came to them to place business and they would try to obtain the insurance protection needed by the local agent. For six or seven years they had dealt with Barrett and Weeks on this basis.

When Johnson received the inquiry from Barrett and Weeks about placing the fire insurance risk for H. & W. he told them he would try to place it for them. He had previously, in June or July of 1968, read an advertisement in The National Underwriter, a weekly insurance periodical, of a general agency known as "International General Agency, Ltd.," which had an address in St. Louis, Missouri. As result of this advertisement,

he had phoned International to find out what facilities they had available for placing insurance, particularly for placing substandard fire risks. When Johnson received the application from Barrett and Weeks, he called International and outlined the type of risk involved and asked what rate they would charge. They told him what rate they would need, and Johnson gave this information to Barrett and Weeks and was subsequently told to place the insurance. International told Johnson that the risk would be placed with Underwriters at Lloyd's, London. Because Underwriters at Lloyd's, London was not licensed to do business in North Carolina, Johnson then signed and submitted to the Insurance Commissioner of the State of North Carolina the official form making application for permission to place the insurance with a company not licensed in this State. On this application Johnson set out the name of the unlicensed company that would cover the risk as "Lloyd's of London, Underwriters." The Commissioner of Insurance granted the application and gave his approval to place the insurance as requested. Thereafter a Certificate of Insurance No. 10217US was issued showing fire and extended coverage insurance in the amount of $100,000.00 on the contents of the building occupied by the nightclub in Charlotte, N. C. This certificate, which is plaintiff's exhibit 10, is on a printed form which bears at the top the name "International General Agency, Ltd., P. O. Box 188, St. Louis, Missouri, U.S.A.," and shows the insurance placed "100% with Underwriters at Lloyd's, London and or insurance companies." The words "Underwriters at Lloyd's, London" are part of the printed form, and the words "and or insurance companies" were added by typewriter. The certificate shows the "assured" as "H & W Corp. D/B/A 'The Purple Penguin,'" recites a premium of $2,880.00, and was issued for the period 6 September 1968 to 6 September 1969. At the bottom appears "International General Agency, Ltd., by Horace M. Johnson & Company Inc.," the name "International General Agency, Ltd." being part of the printed form and the name "Horace M. Johnson & Company Inc." having been added by typewriter. There then appears the signature of Horace M. Johnson and the date 1 October 1968. On the bottom of the certificate, and as part of the printed form, there appears the following:

> "It is expressly understood by the (insured) (reinsured) by accepting this instrument that International General Agency, Ltd., is not one of the underwriters or assurers hereunder and neither is nor shall be in any way

or to any extent liable for any loss or claim whatever, but the assurers hereunder are only those underwriters whose names are on file as hereinbefore set forth."

Other than the names "Underwriters at Lloyd's, London and or insurance companies" above noted, no names of any underwriters are set forth in the certificate. H. & W. paid the premium of $2,880.00 for the coverage from 6 September 1968 to 6 September 1969.

In September 1969 substantially the same procedure was followed and Certificate of Insurance No. 10388US, plaintiff's exhibit 9, was issued on the same printed form. This form shows 100% of the insurance "placed with Underwriters at Lloyd's, London," the words "and or insurance companies" being omitted. This form also purports to provide $100,000.00 fire and extended coverage insurance on the contents of the nightclub building, recites a premium of $2,880.00, is issued for the period 6 September 1969 to 6 September 1970, and names H. & W. Corp. as the assured. It bears at the bottom the same printed notation as is above quoted from the previous certificate. Following the printed name of International General Agency, Ltd. at the bottom of the certificate there appears the signature, "Horace M. Johnson Gen. Agt.," and the date "September 9, 1969." In late 1968 or early 1969 Johnson had received written authorization from International General to sign and issue insurance certificates on their printed forms after he had consulted with them and gained their approval of the risk. Certificate No. 10388US bears the endorsement, dated 6 September 1969 and also signed by "Horace M. Johnson, Gen Agt," that the "Name of the Insured is amended to read Nick D. Kaperonis and or Piedmont Enterprises, Inc., as their interest may appear." Premium in the amount of $2,880.00 was also paid for the coverage purportedly provided by Certificate No. 10388US for the period 6 September 1969 to 6 September 1970.

On 15 December 1969 Johnson wrote a letter to the General Adjustment Bureau in which he made reference to The Purple Penguin and in which he said: "Do you have anyone on your staff who can inventory contents of the above risk? We are presently providing $100,000.00 in Lloyd's of London and there is a possibiltiy of over insurance." The General Adjustment Bureau agreed to make the requested inventory and appraisal, but none was made prior to the fire because of difficulty in arranging for access to the building.

· On 7 April 1970 plaintiffs' attorney wrote a letter to Johnson & Co. in which he inquired if policy number 10388US was in full force and effect and, if so, requested that he be notified of any future change or cancellation. By letter dated 28 April 1970 and signed by Horace M. Johnson as president of Johnson & Co., Inc., the attorney was informed:

"Our records indicate the above policy is in full force and effect.

"In accordance with your request we marked our file to promptly notify you of any change or cancellation of this policy."

In early 1970 International General Agency, Ltd., changed its name to Champion Corporation, Underwriters and moved its offices from St. Louis to Fort Lauderdale, Florida. In May 1970, before the fire, Johnson visited its Fort Lauderdale office. He had previously, on receipt of the letter from plaintiffs'. attorney, reviewed his files with them. On his visit to the Fort Lauderdale office in May 1970, he made no further inquiry about Mr. Kaperonis's coverage.

After the fire at "The Purple Penguin," which occurred on 23 May 1970 and in which plaintiff Kaperonis's property was destroyed, Champion Corporation, Underwriters employed the General Adjustment Bureau to arrive at an adjustment of the loss. This was done, and agreement was finally reached between the General Adjustment Bureau and Kaperonis fixing the Kaperonis loss at $95,832.72 less a $250.00 deductible, making a net approved claim of $95,582.72. Nothing was ever paid on account of this claim.

After the fire it developed that neither International General Agency, Ltd. nor Champion Corporation, Underwriters were authorized to represent Underwriters at Lloyd's, London or any of its constituent member syndicates or underwriters. Neither was licensed as an insurance agency in the State of Missouri. Champion Corporation, Underwriters was not licensed to transact any insurance business in the State of Florida, and the records in the office of the Secretary of State of Florida do not disclose a record of a corporation by the name of Champion Corporation, Underwriters either as a domestic or foreign corporation. The principals in International and in Champion with whom defendant Johnson dealt have, since the fire, been indicted for fraud arising out of their insurance operations. John-

son testified that he learned of this at some time after August 1970, and that the indictments had been issued in "apparently one of the largest mail frauds in the country."

[1] It is well established in this State that if an insurance agent or broker undertakes to procure for another insurance against a designated risk, the law imposes upon him the duty to use reasonable skill, care and diligence to procure such insurance and holds him liable to the proposed insured for loss proximately caused by his negligent failure to do so. Furthermore, if the agent or broker is unable to procure the insurance he has undertaken to provide, it is his duty to give timely notice to the proposed insured in order that he may have the opportunity to take the necessary steps to protect himself otherwise. *Mayo v. Casualty Co.,* 282 N.C. 346, 192 S.E. 2d 828 (1972) ; *Wiles v. Mullinax,* 267 N.C. 392, 148 S.E. 2d 229 (1966) ; *Elam v. Realty Co.,* 182 N.C. 599, 109 S.E. 632 (1921) ; *Musgrave v. Savings & Loan Assoc.,* 8 N.C. App. 385, 174 S.E. 2d 820 (1970).

[2] In the present case the jury found by its answers to the first two issues that both defendants, Johnson individually and Johnson & Co., Inc., undertook to procure the insurance for plaintiff Kaperonis, and there is ample evidence to support the verdict on those issues. All of the evidence shows that defendants never procured valid insurance coverage as they had undertaken to do and that they never gave plaintiff notice of this fact prior to the fire. All of the evidence also shows, however, that defendants thought they had procured the requested insurance in a solvent company and that they learned of their error only after the fire. The question presented, then, is whether the evidence was sufficient to support a jury finding that the defendants failed to exercise reasonable skill, care and diligence in allowing themselves to be misled by the fraudulent acts of others or in failing to make a timely discovery of the fraud. We hold that it was.

Johnson himself testified either by answer to interrogatories and by depositions taken prior to trial or by testimony at the trial, that after seeing the advertisement of International General Agency, Ltd. in the insurance industry periodical he never contacted the Insurance Commissioner of the State of Missouri to determine whether International was licensed in that State, that he never attempted to ascertain if Champion Corporation, Underwriters was licensed to engage in the insurance

business in Missouri or in Florida and did not know if they were authorized to engage in the insurance business in any State, that prior to 6 September 1969 he had transacted business with Underwriters at Lloyd's, London, both directly and through their United States representative, that he knew of a United States representative of Underwriters at Lloyd's, London, but he did not approach that representative for the purpose of placing this risk, that he never saw any written authorization from Underwriters at Lloyd's, London, or any other person, firm or corporation authorizing International to bind them with regard to this risk, that he made no inquiry concerning the authority of International to act on behalf of the Underwriters at Lloyd's, London, that he relied solely upon the information in the advertisement as to the authority of International to act for Underwriters at Lloyd's, London, that International never issued and delivered to him any policy of insurance for the period September 1968 to September 1969 or for the period September 1969 to September 1970, that he never received any policy of insurance either from Underwriters at Lloyd's, London or from any other person, firm or corporation pertaining to the fire and extended coverage insurance as set forth in plaintiff's exhibit 9, that when he signed the certificate of insurance, plaintiff's exhibit 9, on 9 September 1969, he had never received any authorization or commitment directed to him from Underwriters at Lloyd's, London, and that he never received any acknowledgment or binder from Underwriters at Lloyd's, London that they had undertaken to insure the risk covered by either Certificate of Insurance No. 10217US (plaintiff's exhibit 10) or No. 10388US (plaintiff's exhibit 9).

Although defendants presented evidence, in testimony of Johnson and of two other general insurance agents, that the custom and practice in the insurance business is not to make investigations of firms advertised in The National Underwriter and that defendants in this case "acted in accordance with the general practices of the insurance industry," this would not preclude the jury from finding that the defendants were negligent. Conformity to established practices in a particular trade or business, while certainly relevant in judging due care, is not as a matter of law the exercise of due care. Usage and custom do not justify negligence and cannot serve to establish as safe in law that which is dangerous in fact. "What usually is done may be evidence of what ought to be done, but in the last analysis, what ought to be done is fixed according to the standard of the ordi-

narily prudent man, whether or not it is customary to comply with that standard." 57 Am. Jur. 2d, Negligence, § 78, p. 429. Although there was also other evidence in this case which helped to explain how defendants came to be misled by the fraud which was perpetrated upon them, such evidence did not establish as a matter of law that they exercised due care. Viewing all of the evidence in the light most favorable to the plaintiff, it is our opinion, and we so hold, the matter was for the jury and it was error to allow defendants' motions n.o.v.

### DEFENDANTS' APPEAL

[3]   The evidence shows that certain of the actions taken to secure placement of the insurance and throughout all of the events disclosed by the evidence were taken by the individual defendant, Horace M. Johnson, apparently acting as an individual, while at other times he appeared to have acted in his capacity as president of the corporate defendant, Horace M. Johnson & Co., Inc. However, the third and fourth issues as submitted to the jury were so framed, and the court's instructions to the jury were so expressed, that the jury was required to answer the issues in the affirmative if they should find negligence on the part of either defendant was a proximate cause of plaintiff's loss which resulted from the lack of insurance coverage at the time of the fire. In effect, if the jury found against either defendant, it was required to find against both, though the evidence would have permitted finding against one and not against the other. In this there was error for which defendants are entitled to a new trial.

The result is:

On plaintiff's appeal, the judgment n.o.v. is

Reversed.

On defendants' conditional appeal, a new trial is ordered.

New trial.

Judges BRITT and VAUGHN concur.