JOHN W. WHITE AND HIS WIFE, KATHERINE A. WHITE, PLAINTIFFS v. CONSOLIDATED PLANNING, INC.; PARK AVENUE SECURITIES, LLC; GUARDIAN INVESTOR SERVICES CORPORATION; THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA; KEYPORT LIFE INSURANCE COMPANY; PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY; AND ROBERT W. WHITE, DEFENDANTS

No. COA03-483

(Filed 5 October 2004)

**1. Employer and Employee— negligent hiring—reasonable investigation**

The trial court erred by granting defendant financial planning company's motion to dismiss plaintiff customer's claim for negligent hiring of plaintiff's son, an insurance agent who misappropriated funds from plaintiff's various insurance and annuity products, because the allegations were sufficient to assert that defendant company could have discovered the unfitness of plaintiff's son had it conducted a reasonable investigation prior to hiring him.

**2. Fiduciary Relationship— breach of fiduciary duty—insurance agent**

The trial court erred by granting defendant financial planning company's motion to dismiss plaintiff customer's claim for breach of fiduciary duty regarding plaintiff's son who misappropriated funds from plaintiff's various insurance and annuity products while employed as an insurance agent of defendant company, because: (1) the complaint sufficiently alleged that a relationship of confidence and trust existed between plaintiff and plaintiff's son, individually and in his capacity as an employee and agent of defendant company; (2) plaintiff was not required to allege wrongful benefit as an element of this claim since it is an element of constructive fraud; and (3) plaintiff sufficiently alleged that he relied upon false representations of the status of his investment accounts provided by his son in his capacity as an employee and agent of defendant company and that plaintiff's son in carrying out his duties as an agent and employee of defendant company converted plaintiff's funds to his own use.

**3. Fraud— constructive—motion to dismiss—sufficiency of evidence**

The trial court did not err by granting defendant financial planning company's motion to dismiss plaintiff customer's claim for constructive fraud, because: (1) an allegation of the payment

of commissions for transactions actually performed is not sufficient to survive a motion to dismiss a claim for constructive fraud; and (2) the allegation failed to show that defendant sought to benefit itself by taking unfair advantage of plaintiff.

### 4. Employer and Employee— vicarious liability—scope of employment

The trial court erred by granting summary judgment on claims of fraud, conversion, and unfair and deceptive trade practices to the extent that the judgment was based on defendant financial planning company's lack of vicarious liability because: (1) the torts at issue occurred through defendant employee's investment advice, his completion of customer forms, his processing of loans, and his administration of customer accounts; (2) defendant company selected and employed defendant employee specifically to perform the functions that he exploited to accomplish his fraud and theft; and (3) plaintiff presented sufficient evidence to permit a jury to find that defendant employee was acting within the scope of his employment.

### 5. Negligence— breach of duty—duty to exercise reasonable skill, care, and diligence

The trial court erred by granting summary judgment on plaintiff customer's negligence claim based on defendant financial planning company's breach of duty to discover defendant insurance agent employee's misappropriation of funds from plaintiff's various insurance and annuity products, because: (1) defendant company did not contend that defendant employee was acting outside the scope of his employment when he agreed to obtain the pertinent insurance policy and annuities; (2) plaintiff offered evidence that defendant company reaped commissions from its relationship with plaintiff, additional evidence showing that defendant company agreed to procure insurance for plaintiff which showed defendant owed plaintiff a duty to exercise reasonable skill, care, and diligence in doing so; and (3) plaintiff offered sufficient expert testimony regarding the standard of care in the insurance industry to show there was a genuine issue whether defendant company breached its duty to plaintiff.

### 6. Unfair Trade Practices— summary judgment—sufficiency of evidence—in or affecting commerce

The trial court erred by granting summary judgment in favor of defendant financial planning company on an unfair and decep-

tive trade practices claim arising out of defendant insurance agent employee's misappropriation of funds from plaintiff's various insurance and annuity products, because: (1) the pertinent life insurance policy and fixed-rate annuities appear to be insurance products and not securities or other capital-raising financial instruments; and (2) conduct relating to insurance products is covered by Chapter 75.

**7. Estoppel— equitable—defense of expiration of statute of limitations**

Plaintiff customer was entitled to proceed to trial on his equitable estoppel claim regarding defendant financial planning company's motion for summary judgment on the grounds that plaintiff's conversion, negligence, and fraud claims were barred by the applicable statute of limitations, because: (1) equitable estoppel may be asserted against defendant company if defendant insurance agent employee acted within the scope of his employment, and plaintiff has submitted sufficient evidence to permit a jury to impute defendant employee's actions to defendant company; and (2) a jury could draw the inference that defendant company lulled plaintiff into a false sense of security by failing, after learning of defendant employee's dishonesty, to notify plaintiff of defendant employee's acts, to reassign plaintiff to another account executive or to forward statements received for plaintiff's account.

**8. Statutes of Limitation and Repose— fraud—reasonable diligence—fiduciary—discovery rule**

The trial court erred by concluding that plaintiff customer's fraud claim against defendant financial planning company was barred by the statute of limitations based on the fact that plaintiff did not file suit until August 2001 which was more than three years after all but two of the transactions occurred, because: (1) the evidence presented by plaintiff would permit, although not require, a jury to conclude that as a result of defendant employee's acts of concealment, plaintiff did not fail to exercise reasonable diligence in discovering the fraud; and (2) a lack of reasonable diligence may be excused when the fraud was committed by a fiduciary, plaintiff's evidence supports a finding of a fiduciary relationship with defendant employee and with defendant company, and the record contains no undisputed evidence of an event that would necessarily have placed plaintiff on notice that defendants were failing to disclose all essential facts.

**9. Statutes of Limitation and Repose— negligence—pecuniary loss**

The trial court did not err by concluding that plaintiff customer's negligence claim against defendant financial planning company was barred by the statute of limitations based on the fact that plaintiff did not file suit until August 2001 which was more than three years after all but two of the pertinent transactions occurred, subject only to its claim of equitable estoppel, because: (1) contrary to plaintiff's contention, N.C.G.S. § 1-52(16) which includes a discovery rule applies only to claims for personal injury or physical damage to claimant's property rather than a claim for purely pecuniary loss; and (2) when the General Assembly has intended to include pecuniary loss within the scope of a discovery rule, it has done so expressly. However, the two loan transactions occurring on 15 December 1998 and 22 February 1999 are not time-barred under N.C.G.S. § 1-52(5).

**10. Statutes of Limitation and Repose— conversion—withdrawal of funds without permission**

The trial court did not err by concluding that plaintiff customer's conversion claim against defendant financial planning company was barred by the statute of limitations based on the fact that plaintiff did not file suit until August 2001 which was more than three years after all but two of the pertinent transactions occurred, because: (1) contrary to plaintiff's contention, N.C.G.S. § 1-52(16) which includes a discovery rule applies only to claims for personal injury or physical damage to claimant's property, and plaintiff's claim that defendant employee converted his funds does not amount to a claim for physical damage to property; and (2) although plaintiff contends that his conversion claim did not accrue and the statute of limitations did not begin to run until he demanded the converted property and either defendant company or defendant employee refused to return it, defendant employee did not rightfully come into personal possession of plaintiff's funds, the wrongful taking and defendant employee's possession of the funds were simultaneous, and the conversion occurred when defendant employee withdrew the funds from the annuities without plaintiff's permission.

Appeal by plaintiff John W. White from judgments entered 27 February 2002 by Judge Lindsay R. Davis, Jr. and 26 November 2002

by Judge Russell G. Walker, Jr. in Forsyth County Superior Court. Heard in the Court of Appeals 14 January 2004.

*Kilpatrick Stockton, L.L.P., by David C. Smith and Tonya R. Deem, for plaintiffs-appellants.*

*Sharpless & Stavola, P.A., by Lynn E. Coleman, for defendant-appellee Consolidated Planning, Inc.*

GEER, Judge.

This appeal presents the question whether the sins of the son should be visited upon the father. Plaintiff-appellant John W. White ("plaintiff") lost more than $300,000.00 when his son Robert W. White ("Robert White"), an account executive and Senior Vice President for defendant Consolidated Planning, Inc. ("Consolidated"), misappropriated the funds. Plaintiff has appealed from the trial court's orders granting Consolidated's motion to dismiss plaintiff's claims for negligent hiring, breach of fiduciary duty, constructive fraud, and one instance of conversion and granting summary judgment to Consolidated on plaintiff's remaining claims for negligence, conversion, fraud, and unfair and deceptive trade practices.

For reasons discussed below, we reverse the trial court's dismissal of the negligent hiring, breach of fiduciary duty, and conversion claims, but affirm as to the constructive fraud claim. We reverse the trial court's entry of summary judgment on the claims of fraud, conversion, and unfair and deceptive trade practices to the extent that the judgment was based on Consolidated's lack of vicarious liability because plaintiff has presented sufficient evidence to permit a jury to find that Robert White was acting "within the scope of his employment" as our courts have defined that phrase. We agree with the trial court that plaintiff's claims for conversion and negligence are barred by the statute of limitations, but hold that there are genuine issues of material fact as to the timeliness of plaintiff's fraud claim and as to whether Consolidated is equitably estopped from pleading the statute of limitations with respect to each of plaintiff's claims. Finally, we hold that plaintiff has forecast sufficient evidence that he will be able to present a *prima facie* case of negligence and unfair and deceptive trade practices. We, therefore, affirm in part and reverse in part.

## Facts

The evidence presented on defendant's motion for summary judgment, when viewed in the light most favorable to the plaintiff, tends

to show the following. Defendant Consolidated provides financial planning services to both individuals and businesses, specifically including retirement planning analyses. It is a general agent for defendant Guardian Life Insurance Company ("Guardian") and has agency agreements to sell insurance products for companies such as defendant Keyport Life Insurance Company ("Keyport") and defendant Provident Life and Accident Insurance Company ("Provident"). Consolidated employed John and Katherine White's son, Robert White, a licensed insurance agent, as an account executive in its Winston-Salem office between March 1992 and May 1999. As part of Consolidated's marketing plan, the company gave Robert White the title of Vice President and, later, Senior Vice President even though he was not an officer of the company. Robert White sold annuity products and life insurance policies for several companies, earning commissions for himself and Consolidated. He was authorized to handle client funds and service client accounts.

Both Mr. and Mrs. White, who are retirees, purchased various insurance and annuity products through their son using money that they had saved through employer-sponsored retirement plans. Consolidated founder and president Charles R. Dobson, Sr. testified that Consolidated considered the Whites to be customers of Consolidated when purchasing these products. The Whites had no prior investment experience and had never before worked with a financial advisor.

Robert White recommended that his father invest his retirement funds in Keyport annuities. On or about 19 December 1993, plaintiff, through his son, rolled over funds from his retirement into a Keyport annuity in the amount of $177,508.21 ("first Keyport annuity"). On or about 18 April 1994, plaintiff purchased, again through his son, a second annuity issued by Keyport in the amount of $267,926.75 ("second Keyport annuity"). Consolidated and Robert White both received commissions for these transactions.

Beginning in 1995, Robert White, because of a gambling addiction, began systematically siphoning funds from plaintiff's annuities without plaintiff's knowledge. To obtain the money, Robert White notified Keyport that plaintiff's address was that of his own office at Consolidated. Robert White then forged plaintiff's signature on requests to withdraw funds from the annuities. Keyport disbursed the funds either by checks delivered to Robert White at Consolidated's address or by wire transfer into an account that he specifically

**WHITE v. CONSOLIDATED PLANNING, INC.**

[166 N.C. App. 283 (2004)]

created for the funds. In nine transactions, Robert White withdrew a total of $127,820.91 from the Keyport accounts.

To hide the thefts, Robert White provided fictitious Keyport account statements to plaintiff, which the Whites testified led them to believe plaintiff's funds were intact. Plaintiff did not receive account statements or other correspondence directly from Keyport because Robert White had listed Consolidated's address as the record address for the annuities. Fearing, however, that his parents would learn of the thefts through tax documents, Robert White convinced the Whites to leave their tax preparer, told them he would handle their taxes, and then failed to file their tax returns for 1996 through 1999.

In March 1997, Robert White induced his father to transfer funds from the second Keyport annuity to an annuity issued by Provident by falsely promising him that the Provident policy would generate a particular rate of return. In fact, the Provident annuity had a lower rate of return. In addition, Robert White did not tell his father that the transfer would incur a surrender charge of $12,350.44 to Keyport and commissions to Robert White and Consolidated.

As he had with the Keyport annuities, Robert White notified Provident that plaintiff's address was that of Consolidated's office with the result that plaintiff did not receive any account statements or correspondence directly from Provident. Robert White forged plaintiff's signature on four separate requests to withdraw funds from the Provident annuity, withdrawing a total of $175,402.33. Robert White hid these transactions by providing his father with false account statements on Consolidated letterhead. By 8 January 1998, the Provident annuity had been fully surrendered.

On 28 June 1996, Robert White purchased a $200,000.00 life insurance policy from Guardian for his father. As he had with the Keyport and Provident annuities, Robert White changed the record address for the policy although on this occasion, he used his own home address so that all documentation regarding the Guardian policy was sent to Robert White's home. Significantly, Guardian had a policy of not forwarding disbursements on its policies to an agency address; it required that all checks be sent to the policy owner's address of record. Between July 1998 and February 1999, Robert White requested four loans on the policy (totaling approximately $10,000.00) for his own use and without his father's knowledge.

With respect to the 15 December 1998 and 22 February 1999 loan requests, Robert White submitted them for processing to Consolidated, as general agent for Guardian, rather than to Guardian. Robert White faxed a memo to Consolidated's office in Charlotte requesting that the loan proceeds on plaintiff's policy be sent to Robert White's home address "ASAP, please." When Robert White failed to repay the loans, the policy was canceled and the obligations were repaid from the policy principal. Plaintiff was unaware that his policy had been canceled because correspondence regarding the policy was sent to Robert White's home.

In April 1999, Pamela Westbrook, another client of Consolidated and Robert White, filed a complaint with the National Association of Securities Dealers reporting that Robert White had misappropriated money from her account by liquidating one of her investments and placing her funds in his personal bank account, by providing her with fraudulent account statements, and by requesting that she sign blank customer service forms. After an investigation of this complaint, Consolidated terminated Robert White on 28 May 1999.

Consolidated contacted certain other clients whose accounts Robert White had handled to determine if he had mishandled their funds. In August 1999, Consolidated clients Hilary and Robin McKeown complained that Robert White had mishandled their funds by placing them in an account they did not request. Consolidated reassigned Robert White's accounts to other representatives.

With respect to the Whites, however, Consolidated did not inform the Whites that their son had been terminated or disclose that he had mishandled funds in client accounts. Consolidated allowed Robert White to take plaintiff's Provident and Keyport account files with him, but kept the Guardian file. The company did not reassign the Whites to another account representative or investigate the status of their accounts to determine whether Robert White had mishandled their funds. Consolidated also did not forward to the Whites the account statements and other correspondence that Robert White had fraudulently arranged to have sent to the Consolidated office. Plaintiff offered evidence that Consolidated's standard practice was to allow mail addressed to the clients of terminated executives to accumulate at Consolidated's office.

Robert White assured his parents that his separation from Consolidated was amicable and a mutual decision. He told them that

he would continue to manage their accounts. The Whites did not learn that their son had been terminated and their funds misappropriated until April 2001 when Mrs. White called Keyport for information about a tax form. A representative of Keyport told Mrs. White that only $30,000.00 was left in the first Keyport annuity, and that the second Keyport annuity had been fully surrendered in February 1997 and transferred to the Provident annuity in March 1997. When Mrs. White called Provident, she was told that the Provident annuity had been fully exhausted. Robert White admitted to his parents that day that he had stolen their money and spent it gambling or trading stocks. From 1995 through 1999, Robert White stole in excess of $300,000.00 from his parents.

## Procedural History

The Whites filed this action on 9 August 2001 against Consolidated, Park Avenue Securities, LLC ("PAS"), Guardian Investor Services Corporation ("GISC"), Guardian, Keyport, Provident, and Robert White, seeking damages as a result of the misappropriation of their retirement funds. Default was entered against Robert White on 15 November 2001. On 11 January 2002, Judge Lindsay R. Davis, Jr. entered a consent order staying the claims of Mrs. White against PAS, GISC, and Consolidated pending arbitration. Mrs. White's claims are not, therefore, the subject of this appeal. Only Mr. White's claims are before this Court.

On 27 February 2002, Judge Davis granted the corporate defendants' motion to dismiss in part, including plaintiff's claims against Consolidated for negligent hiring, conversion of the Keyport annuities, breach of fiduciary duty, and constructive fraud. Plaintiff thereafter settled with PAS, GISC, Guardian, Keyport, and Provident and filed a voluntary dismissal as to them, leaving Consolidated as the sole defendant. On 26 November 2002, Judge Russell G. Walker, Jr. granted Consolidated's motion for summary judgment as to the remaining claims, including conversion, fraud, unfair and deceptive trade practices, and negligence. Plaintiff appeals from both the motion to dismiss order and the summary judgment order.

## Motion to Dismiss

We first address plaintiff's contention that the trial court erred in dismissing, pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, their claims for negligent hiring, breach of fiduciary

duty, and constructive fraud.[1] In deciding a motion to dismiss pursuant to Rule 12(b)(6), the trial court must determine " 'whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory.' " *Block v. County of Person,* 141 N.C. App. 273, 277, 540 S.E.2d 415, 419 (2000) (quoting *Harris v. NCNB,* 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987)). The court must construe the complaint liberally and "should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief." *Id.* at 277-78, 540 S.E.2d at 419.

A. Negligent Hiring

[1] The trial court dismissed plaintiff's claim that Consolidated should be held liable for Robert White's conduct because of its negligent hiring of White. The elements of a claim for negligent hiring are: (1) a specific tortious act by the employee; (2) the employee's incompetence or unfitness; (3) the employer's actual or constructive notice of the employee's incompetency or unfitness; and (4) injury resulting from the employee's incompetency or unfitness. *Medlin v. Bass,* 327 N.C. 587, 591, 398 S.E.2d 460, 462 (1990).

The only element at issue with respect to this claim is Consolidated's actual or constructive knowledge. A plaintiff may establish the necessary knowledge by showing that the employer either "knew or reasonably could have known" of the employee's unfitness. *Id.* at 592, 398 S.E.2d at 463. Plaintiff alleged that "Rob White has been engaging in similar illegal activity since about 1992. Upon information and belief, such activity led to termination from his previous employer." Plaintiff further alleged that Consolidated was negligent in "[f]ailing to properly investigate the background of Defendant Rob White prior to allowing him to handle customer accounts, when such an investigation reasonably would have revealed his improprieties[.]" When construed liberally, these allegations are sufficient to assert that Consolidated would have discovered Robert White's unfitness had it conducted a reasonable investigation prior to hiring him and are sufficient to allege a negligent hiring claim. *Deitz v. Jackson,* 57 N.C. App. 275, 278-79, 291 S.E.2d 282, 285 (1982) (reversing dismissal because allegations that

---

1. Although the trial court also granted the motion to dismiss plaintiff's conversion claim as to the Keyport annuities based on the statute of limitations, we will address all of the conversion claims at one time below.

the defendants had a duty to hire a competent construction company, breached that duty, and plaintiff was injured as a result, provided "adequate notice of the nature and extent of a legally recognized claim"). The trial court erred in granting the motion to dismiss as to plaintiff's negligent hiring claim.

## B. Breach of Fiduciary Duty and Constructive Fraud

Plaintiff asserted causes of action for both breach of fiduciary duty and constructive fraud. Although the elements of these causes of action overlap, each is a separate claim under North Carolina law. *Governor's Club, Inc. v. Governors Club Ltd. P'ship*, 152 N.C. App. 240, 249, 567 S.E.2d 781, 787 (2002), *aff'd per curiam*, 357 N.C. 46, 577 S.E.2d 620 (2003).

[2] A claim for breach of fiduciary duty requires the existence of a fiduciary relationship. In *Vail v. Vail*, 233 N.C. 109, 114, 63 S.E.2d 202, 206 (1951), the Supreme Court explained: "In general terms, a fiduciary relation is said to exist '[w]herever confidence on one side results in superiority and influence on the other side; where a special confidence is reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing the confidence.'" *Id.* (quoting 37 C.J.S. *Fraud* § 2, at 213). In *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931) (internal quotation marks omitted), the Court explained:

> The relation . . . not only includes all legal relations, such as attorney and client, broker and principal, executor or administrator and heir, legatee or devisee, factor and principal, guardian and ward, partners, principal and agent, trustee and *cestui que trust*, but it extends to any possible case in which a fiduciary relation exists in fact, and in which there is confidence reposed on one side, and resulting domination and influence on the other.

In this case, the complaint alleged that "[a] relationship of confidence and trust" existed between plaintiff and Robert White, individually and in his capacity as "an employee and agent" of Consolidated. It alleged that "[b]ecause of [the Whites'] lack of expertise in financial affairs," they relied upon Robert White and Consolidated to properly manage their funds. We find that these allegations, together with further facts and circumstances set forth in the complaint, adequately plead the existence of a fiduciary relationship. *Vail*, 233 N.C. at 111, 63 S.E.2d at 204 (defendant son was a fiduciary when he "frequently acted as [his mother's] agent" in handling her rental real estate);

*Phillips v. State Farm Mut. Auto. Ins. Co.*, 129 N.C. App. 111, 113, 497 S.E.2d 325, 327 ("An insurance agent acts as a fiduciary with respect to procuring insurance for an insured[.]"), *disc. review denied*, 348 N.C. 500, 510 S.E.2d 653 (1998); *Forbes v. Par Ten Group, Inc.*, 99 N.C. App. 587, 599, 394 S.E.2d 643, 650 (1990) (quoting *Kim v. Professional Bus. Brokers Ltd.*, 74 N.C. App. 48, 51-52, 328 S.E.2d 296, 299 (1985)) (" '[A] broker representing a purchaser or seller in the purchase or sale of property owes a fiduciary duty to his client based upon the agency relationship itself.' "), *disc. review denied*, 328 N.C. 89, 402 S.E.2d 824 (1991).

Defendant contends that there can be no breach of fiduciary duty without an allegation "that the defendant [sought] to benefit wrongfully from the transaction." Wrongful benefit is, however, an element of constructive fraud and not of a claim for breach of fiduciary duty. *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 666, 488 S.E.2d 215, 224 (1997) ("In order to maintain a claim for constructive fraud, . . . the defendant must seek to benefit himself."). For this claim, plaintiff was only required to plead a breach of Consolidated's fiduciary duty.

Plaintiff alleges that he relied upon false representations of the status of his Keyport, Provident, and Guardian accounts provided by Robert White "in his capacity as an employee and agent" of Consolidated and that Robert White, "in carrying out his duties as an agent and employee" of Consolidated, converted plaintiff's funds to his own use. On the basis of these allegations, we conclude that the complaint sufficiently alleged a breach of fiduciary duty to withstand a motion to dismiss.

[3] We reach a different conclusion as to plaintiff's claim for constructive fraud. To survive a motion to dismiss, a cause of action for constructive fraud must allege (1) a relationship of trust and confidence, (2) that the defendant took advantage of that position of trust in order to benefit himself, and (3) that plaintiff was, as a result, injured. *Sterner v. Penn*, 159 N.C. App. 626, 631, 583 S.E.2d 670, 674 (2003). Intent to deceive is not an element of constructive fraud. *Link v. Link*, 278 N.C. 181, 192, 179 S.E.2d 697, 704 (1971). The primary difference between pleading a claim for constructive fraud and one for breach of fiduciary duty is the constructive fraud requirement that the defendant benefit himself.

Since we have already found sufficient allegations of a fiduciary relationship, the controlling issue as to the constructive fraud claim

**WHITE v. CONSOLIDATED PLANNING, INC.**

[166 N.C. App. 283 (2004)]

is whether the complaint sufficiently alleges a wrongful benefit to Consolidated as a result of the transactions involving plaintiff's funds. A plaintiff must allege that the benefit sought was more than a continued relationship with the plaintiff or payment of a fee to a defendant for work it actually performed. *Sterner*, 159 N.C. App. at 631-32, 583 S.E.2d at 674. In arguing that his complaint is sufficient on this issue, plaintiff points only to his allegations that Consolidated benefitted through the payment of commissions. This Court held in *Sterner*, however, that an allegation of the payment of commissions for transactions actually performed is not sufficient to survive a motion to dismiss a claim for constructive fraud. *Id.* at 632, 583 S.E.2d at 674 ("We conclude, therefore, that the complaint, taken in the light most favorable to plaintiff, alleges simply that defendants benefitted by earning commissions on the sales transactions ordered by [the agent]. This allegation, by itself, is not enough; it fails to show that defendants sought to benefit themselves by taking unfair advantage of plaintiff, as our law requires."). We hold that the trial court properly granted the motion to dismiss plaintiff's constructive fraud claim.

## Motion for Summary Judgment

[4] We next consider the trial court's entry of summary judgment in favor of Consolidated on the claims of negligence, conversion, fraud, and unfair and deceptive trade practices. Consolidated moved for summary judgment on three grounds: (1) it was not vicariously liable for Robert White's acts and thus not liable for claims of fraud, conversion, and unfair and deceptive trade practices; (2) plaintiff failed to present sufficient evidence of negligence and unfair and deceptive trade practices; and (3) plaintiff's claims for fraud, conversion, and negligence are barred by the statutes of limitation.[2]

"It is well established that the standard of review of the grant of a motion for summary judgment requires a two-part analysis of whether, (1) the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact; and (2) the moving party is entitled to judgment as a matter of law." *Von Viczay v. Thoms*, 140 N.C. App. 737, 738, 538 S.E.2d 629, 630 (2000) (internal quotation marks omitted), *aff'd per curiam*, 353 N.C. 445, 545 S.E.2d 210 (2001). The moving party has the burden of establishing the absence

---

2. Neither party has raised the statute of limitations issue in connection with plaintiff's claim for unfair and deceptive trade practices.

of any genuine issue of material fact and that it is entitled to judgment as a matter of law. *Garner v. Rentenbach Constructors, Inc.*, 350 N.C. 567, 572, 515 S.E.2d 438, 441 (1999). Both before the trial court and on appeal, the evidence must be viewed in the light most favorable to the non-moving party and all inferences from that evidence must be drawn against the moving party and in favor of the non-moving party. *Id.* We review the trial court's grant of summary judgment *de novo*. *Shroyer v. County of Mecklenburg*, 154 N.C. App. 163, 167, 571 S.E.2d 849, 851 (2002).

A. Vicarious Liability

As a general rule, a principal will be liable for its agent's wrongful acts under the doctrine of *respondeat superior* when the agent's act (1) is expressly authorized by the principal; (2) is committed within the scope of the agent's employment and in furtherance of the principal's business; or (3) is ratified by the principal. *B. B. Walker Co. v. Burns Int'l Sec. Servs., Inc.*, 108 N.C. App. 562, 565, 424 S.E.2d 172, 174, *disc. review denied*, 333 N.C. 536, 429 S.E.2d 552 (1993). The only issue in dispute on this appeal is whether Robert White's acts were committed within the scope of his employment with Consolidated.

Consolidated contends that it cannot be held vicariously liable for the intentional misconduct of its employee Robert White. In North Carolina, intentional torts have rarely been considered within the scope of an employee's employment. *Medlin*, 327 N.C. at 594, 398 S.E.2d at 464. Nevertheless, " 'rarely' does not mean 'never.' " *Borneman v. United States*, 213 F.3d 819, 827 (4th Cir. 2000), *cert. denied*, 531 U.S. 1070, 148 L. Ed. 2d 661, 121 S. Ct. 759 (2001).

The viability of plaintiff's claims against Consolidated is controlled by our Supreme Court's decision in *Thrower v. Coble Dairy Products Coop., Inc.*, 249 N.C. 109, 105 S.E.2d 428 (1958). In *Thrower*, the employer-defendant's salesman engaged in a scheme to steal from his employer's clients. While taking orders and filling out invoices during sales, as he was required to do by his employer, he removed the carbon on invoice tickets when listing purchases, but reinserted it before obtaining the plaintiff's signature. Through this strategy, he obtained blank copies of invoices bearing only the customer's carbon signature. The salesperson then filled out false invoices on the blank carbon copies and submitted them for payment, converting, without his employer's knowledge, nearly $16,000.00 of the customer's money for his personal use.

The *Thrower* Court held that this evidence was "amply sufficient to support the court's findings that [the employee] was 'an employee, agent, and servant of the defendant corporation . . . acting in the course and scope of his employment[.]' " *Id.* at 111, 105 S.E.2d at 430. The Court stated first: "The general rule is that a principal is responsible to third parties for the fraud of its agent while acting within his authority." *Id.* The Court explained:

> "It is elementary that the principal is liable for the acts of his agent, whether malicious or negligent, and the master for similar acts of his servant, which result in injury to third persons, when the agent or servant is acting within the line of his duty and exercising the functions of his employment." *Dickerson v. Atlantic Refining Co.*, 201 N.C. 90, 159 S.E. 446 (1931). "There is no reason that occurs to us why a different rule should be applicable to cases of deceit from what applies to other torts. A corporation can only act through its agents, and must be responsible for their acts. It is of the greatest public importance that it should be so. If a manufacturing and trading corporation is not responsible for the false and fraudulent representations of its agents, those who deal with it will be practically without redress and the corporation can commit fraud with impunity." *Peebles v. Patapsco Guano Co.*, 77 N.C. 233 (1877). *The master is liable for the unlawful or negligent acts of his servant if about the master's business, and if doing or attempting to do that which he was employed to do.*

*Id.* at 111-12, 105 S.E.2d at 430 (emphasis added).

In applying these principles to the employee's embezzlement, the Court noted that the salesperson was "about [his] master's business" because he "was selected and sent out by the defendant as its agent to sell and deliver, and collect for its products." *Id.* at 112, 105 S.E.2d at 430. The Court, as a result, held:

> The evidence in this case shows the [trial] court found the fraud was committed in the sale of defendant's products and in the padding of accounts its agent was authorized to collect. The defendant is liable for plaintiff's loss.

*Id. See also Norburn v. Mackie*, 262 N.C. 16, 23, 136 S.E.2d 279, 284 (1964) ("The general rule is that a principal is responsible to third parties for injuries resulting from the fraud of his agent committed during the existence of the agency and within the scope of

the agent's actual or apparent authority from the principal, even though the principal did not know or authorize the commission of the fraudulent acts.").

*Thrower* is consistent with Restatement (Second) of Agency § 261 and § 262 (1958), previously adopted by this Court in *Parsons v. Bailey*, 30 N.C. App. 497, 501-02, 227 S.E.2d 166, 168-69, *disc. review denied*, 291 N.C. 176, 229 S.E.2d 689 (1976). Section 261 provides: "A principal who puts a servant or other agent in a position which enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud." The section provides the following illustration that parallels both *Thrower* and the facts of this case:

> 2. A, local manager of P, a telegraph company, gives padded statements of account to T, a patron of the company, who pays in accordance with such statements. A deposits the money to P's credit, withdraws the surplus, and absconds. P is subject to liability to T for the excessive payments.

Restatement, § 261, comment a.

The Restatement stresses that it is irrelevant "that the servant or other agent acts entirely for his own purposes, unless the [victim] has notice of this." *Id.* § 262. Section 262 gives the following illustration:

> 1. P, whose business is that of advising persons concerning investments, represents to T that A is his manager. At P's office, T seeks advice of A concerning investments. A, acting solely to promote an enterprise of which he is the owner, makes deceitful statements in regard to it, on the strength of which T invests and loses. P is subject to liability to T.

*Id.*, comment a. *See also Parsons*, 30 N.C. App. at 501-02, 227 S.E.2d at 168 ("It makes no difference that the agent was acting in his own behalf and not in the interests of the principal when the fraudulent act was p[er]petrated unless the third parties had notice of that fact.").

In determining liability, the critical question is whether the tort was committed in the course of activities that the employee was authorized to perform. Thus, in *Thrower*, as in the illustrations in the Restatement, the conversion of funds occurred as part of the very tasks that the employer had given the employee authority to perform. This distinction is in accord with *Dickerson v. Atlantic Refining Co.*,

201 N.C. 90, 159 S.E. 446 (1931), upon which Consolidated relies. The Court stated in *Dickerson*:

> "[I]t is sufficient if the agent was authorized to perform the act in the performance of which the wrong was committed; for the principal is responsible, not only for the act itself, but for the ways and means employed in the performance thereof. The principal may be perfectly innocent of any actual wrong or of any complicity therein, but this will not excuse him, for the party who was injured by the wrongful act is also innocent; and the doctrine is that where one of two or more innocent parties must suffer loss by the wrongful act of another, it is more reasonable and just that he should suffer it who has placed the real wrongdoer in a position which enabled him to commit the wrongful act, rather than the one who had nothing whatever to do with setting in motion to cause of such act."

*Id.* at 98, 159 S.E. at 451 (quoting Reinhard on Agency § 335).

Plaintiff offered evidence that the torts at issue here occurred through Robert White's investment advice, his completion of customer forms, his processing of loans, and his administration of customer accounts. Testimony of Consolidated officers and employees shows that Consolidated authorized and expected Robert White to solicit applications for life insurance and annuity products, to make recommendations about the suitability of investments, to handle loan requests on insurance policies, to inform customers of their account balances, to assist in cash withdrawals from annuities, transmit change-of-address forms, and to handle customer funds. Thus, Consolidated, like the employer in *Thrower*, had selected and employed White specifically to perform the functions that he exploited to accomplish his fraud and theft. Consolidated may, therefore, be held liable for Robert White's conduct.

Consolidated points to *B. B. Walker*, 108 N.C. App. at 566, 424 S.E.2d at 174-75, in which this Court held that an employer could not be held liable when its security guards stole the customer's property that they had been assigned to protect. *Id.* at 565-66, 424 S.E.2d at 174. A comparison of *B. B. Walker* and *Thrower* demonstrates the difference between cases in which an employee is able to commit a tort solely by virtue of his employment and presence on the employer's premises, and those in which an employee is able to commit a tort by performing the precise tasks that he was hired to do and was held out to the public as authorized to perform. In *B. B. Walker*, the defendant

security company's guards stole the plaintiff's property; they were able to commit the tort not because they were performing the task that they were assigned to perform—to protect the customer's property—but because they were stationed at the defendant's warehouse and had access to the property. *Id.* In *Thrower*, the salesman was able to embezzle customer funds solely by virtue of the tasks that he was assigned and authorized to perform, including accepting sales orders, filling out invoices, and billing customers. *Thrower*, 249 N.C. at 112, 105 S.E.2d at 430.

We hold that plaintiff's evidence places it in the *Thrower* category of cases. *See Wabash Indep. Oil Co. v. Wills Ins. Agency*, 248 Ill. App. 3d 719, 724-25, 618 N.E.2d 1214, 1218, *appeal denied*, 153 Ill. 2d 570, 624 N.E.2d 818 (1993) (holding insurance agency liable for conversion by its agent based on vicarious liability). A jury could find, on the basis of this evidence, that Robert White was acting within the scope of his employment or authority and Consolidated was, as a result, liable for Robert White's fraud, conversion, and unfair and deceptive trade practices. Because plaintiff's evidence raises a genuine issue of material fact, the trial court erred in entering summary judgment in favor of Consolidated for these claims on the basis of vicarious liability.

## B. Negligence

[5] In addition to arguing that Consolidated is vicariously liable for Robert White's acts, plaintiff contends that Consolidated is directly liable to plaintiff for its own negligence. As support for his contention that the trial court erred in granting summary judgment on his negligence claim, plaintiff first argues that the trial court should not have allowed Consolidated to argue the merits of the negligence claim because it was not properly raised in defendant's motion for summary judgment.

Rule 7(b)(1) of the North Carolina Rules of Civil Procedure requires that a motion state "with particularity the grounds therefor . . . ." Consolidated's motion for summary judgment stated only that the negligence claim was barred by the statute of limitations. In its brief to the trial court, however, Consolidated contended that plaintiff's evidence was insufficient to establish the elements of a claim for negligence. Plaintiff objected to the trial court, but the court chose to consider Consolidated's arguments as to the sufficiency of the evidence. The particularity requirement was adopted from Fed. R. Civ. P. 7(b). N.C.R. Civ. P. 7, comment to 2000 Amendment. The com-

mentary to our rule reports that "[t]he federal courts do not apply the particularity requirement as a procedural technicality to deny otherwise meritorious motions. Rather, the federal courts apply the rule to protect parties from prejudice, to assure that opposing parties can comprehend the basis for the motion and have a fair opportunity to respond." *Id.* Because plaintiff has not pointed to anything more that he would or could have done had he received greater notice of the issue, we cannot determine that the trial court abused its discretion.

With respect to the merits of plaintiff's claim for negligence, he was required to prove the existence of a legal duty owed to the plaintiff by the defendant, breach of that duty, and a causal relationship between the breach and plaintiff's injury or loss. *Sterner*, 159 N.C. App. at 629, 583 S.E.2d at 672. Defendant has not disputed that it owed a duty of care to plaintiff. Instead, defendant attempts to categorize plaintiff's negligence claim as strictly a claim for negligent retention. We do not view plaintiff's negligence theory so narrowly.

As this Court has recognized, "[i]t is well established in this State that if an insurance agent or broker undertakes to procure for another insurance against a designated risk, the law imposes upon him the duty to use reasonable skill, care and diligence to procure such insurance and holds him liable to the proposed insured for loss proximately caused by his negligent failure to do so." *Kaperonis v. Underwriters at Lloyd's, London*, 25 N.C. App. 119, 128, 212 S.E.2d 532, 538 (1975). In *Kaperonis*, an insurance agent agreed to obtain fire insurance for the plaintiff and attempted to do so through another insurance agency. The second agency purported to provide the desired insurance, forwarding what was ultimately learned to be a fake insurance certificate. When, after a fire, it was discovered that the policy was non-existent and the second agency had been engaged in massive mail fraud, this Court held that the initial agent could be held liable for negligence:

> The question presented, then, is whether the evidence was sufficient to support a jury finding that the defendants failed to exercise reasonable skill, care and diligence in allowing themselves to be misled by the fraudulent acts of others or in failing to make a timely discovery of the fraud. We hold that it was.

*Id.*

Here, plaintiff offered evidence that Consolidated, through Robert White, agreed to procure insurance for plaintiff, including life insurance and annuities. Not even defendant contends that Robert White was acting outside the scope of his employment when he agreed to obtain the Guardian life insurance policy and the Keyport and Provident annuities. *See Olvera v. Charles Z. Flack Agency, Inc.*, 106 N.C. App. 193, 198-99, 415 S.E.2d 760, 763 (1992) (phone call to employee of agency regarding policy was sufficient to give rise to a duty of care on the part of the agency). Further, plaintiff offered evidence that Consolidated reaped commissions from its relationship with plaintiff, additional evidence that Consolidated agreed to procure insurance for plaintiff. Once Consolidated agreed to procure insurance for plaintiff, it owed plaintiff a duty to exercise reasonable skill, care, and diligence in doing so. We are then faced with the question posed in *Kaperonis*: whether Consolidated failed to exercise reasonable skill, care, and diligence when it failed to discover Robert White's fraud and conversion. Like the Court in *Kaperonis*, we hold that plaintiff's evidence is sufficient to survive a motion for summary judgment.

Plaintiff offered sufficient expert testimony regarding the standard of care in the insurance industry to raise a genuine issue of material fact as to whether Consolidated breached its duty to plaintiff. Plaintiff's expert testified that Consolidated did not act in accordance with insurance industry standards by (1) failing to implement anti-fraud policies and procedures despite industry warnings to do so and despite problems with another Consolidated employee; (2) failing to enforce its existing anti-fraud policies and those of Guardian; (3) failing to have any management personnel or procedures in the Winston-Salem office to ensure supervision of account executives; (4) permitting mail, including checks, addressed to customers to be received by account executives at Consolidated's office without any oversight by management; (5) failing to require agents to provide Consolidated's main office with copies of customer records; and (6) ignoring "red flags" that should have suggested that Robert White might be committing fraud. Plaintiff's expert expressed the view that Consolidated's "very lax supervision, very lax setting up of procedures for the office to follow" was "almost an invitation for something to go wrong." He concluded, "Consolidated . . . was deaf, dumb and blind on this episode." This evidence is sufficient to allow a reasonable jury to find that Consolidated breached its duty to plaintiff when it failed to discover Robert White's misconduct.

## C. Unfair and Deceptive Trade Practices

[6] In addition to arguing that it could not be held vicariously liable for Robert White's unfair and deceptive trade practices, Consolidated contends that summary judgment as to that claim was proper because plaintiff could not demonstrate that Robert White's acts were "in or affecting commerce." N.C. Gen. Stat. § 75-1.1 (2003). To establish a *prima facie* case of unfair and deceptive trade practices, a plaintiff must show that (1) the defendant committed an unfair or deceptive act or practice, (2) the act was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff. *Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 664, 464 S.E.2d 47, 58 (1995). The sole issue on appeal is the second element.

Consolidated argues that because Robert White's acts were related to "investment transactions," they do not fall within the scope of N.C. Gen. Stat. § 75-1.1. While N.C. Gen. Stat. § 75-1.1(d) provides that a party claiming exemption from Chapter 75 bears the burden of proving its exemption, our Supreme Court appears to have placed the burden on a plaintiff to prove that the conduct falls within the definition of "commerce" and does not fall within one of the exclusions recognized by the courts. *HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 592, 403 S.E.2d 483, 492 (1991) ("For plaintiff to be entitled to the Act's remedies, it must show that defendants' conduct falls within the statutory framework allowing recovery.").

In *Skinner v. E. F. Hutton & Co.*, 314 N.C. 267, 275, 333 S.E.2d 236, 241 (1985), the Supreme Court held that "securities transactions are beyond the scope of N.C.G.S. 75-1.1." The Court, in reaching this conclusion, relied to a substantial extent on the fact that securities transactions are " 'already subject to pervasive and intricate regulation' " under the North Carolina Securities Act and the federal securities laws. *Id.* (quoting *Lindner v. Durham Hosiery Mills, Inc.*, 761 F.2d 162, 167-68 (4th Cir. 1985)). In *HAJMM*, the Court expanded this exception to cover "the trade, issuance and redemption of corporate securities or similar financial instruments[.]" *HAJMM*, 328 N.C. at 594, 403 S.E.2d at 493. The Court explained that Chapter 75 applies to "the manner in which businesses conduct their regular, day-to-day activities, or affairs," while "[t]he issuance of securities is an extraordinary event done for the purpose of raising capital . . . ." *Id.*[3] This

---

3. The Court was considering revolving fund certificates. It concluded that they were "in essence, corporate securities. . . . [whose] purpose is to provide and maintain adequate capital for enterprises that issue them." *Id.* at 593, 403 S.E.2d at 493.

Court has since applied *HAJMM* to exclude a loan agreement from Chapter 75 coverage: "Because the loan agreement at issue here, which also granted [plaintiff] the right to purchase stock [in a company] in the future, was primarily a capital-raising device, it was not 'in or affecting commerce' for purposes of Chapter 75." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 62, 554 S.E.2d 840, 848 (2001).

Consolidated's focus on whether plaintiff purchased the life insurance and annuities as investments does not apply the proper test. Under *HAJMM*, the question is whether the transactions at issue involved securities or other financial instruments involved in raising capital. The Guardian life insurance policy and the fixed-rate annuities at issue in this case appear to be insurance products and not securities or other capital-raising financial instruments. *See* N.C. Gen. Stat. § 58-58-23 (2003) (insurance code's regulation of annuities); N.C. Gen. Stat. § 78A-2(11) (2003) (excluding insurance policies and fixed-rate annuities from the statutory definition of "securities"). Our courts have repeatedly held that conduct relating to insurance products is covered by Chapter 75. *See, e.g., Pearce v. American Defender Life Ins. Co.*, 316 N.C. 461, 469, 343 S.E.2d 174, 179 (1986) ("[P]eople who buy insurance are consumers whose welfare Chapter 75 was intended to protect[.]"); *Ellis v. Smith-Broadhurst, Inc.*, 48 N.C. App. 180, 183, 268 S.E.2d 271, 273 (1980) (holding that Chapter 75 provides a remedy for unfair practices in the insurance industry).

Without some evidence that the Guardian life insurance policy or the annuities constituted securities or other capital-raising instruments, the transactions at issue fall within the scope of Chapter 75. Because the parties do not raise any issue as to any other element of plaintiff's cause of action under N.C. Gen. Stat. § 75-1.1, we hold that the trial court erred in granting summary judgment on this cause of action.

D. Statute of Limitations

[7] Consolidated moved for summary judgment on the grounds that plaintiff's conversion, negligence, and fraud claims are barred by the applicable statutes of limitation. Consolidated relies upon the fact that plaintiff did not file suit until August 2001, more than three years after all but two of the transactions occurred. While the statute of limitations for conversion, negligence, and fraud is three years, N.C. Gen. Stat. § 1-52 (2003), plaintiff contends that the "discovery rule" applies and he filed suit within three years of discovering his claims.

**WHITE v. CONSOLIDATED PLANNING, INC.**

[166 N.C. App. 283 (2004)]

Alternatively, he argues that Consolidated should be equitably estopped from asserting the statute of limitations.

The question whether a cause of action is barred by the statute of limitations is a mixed question of law and fact. *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 352 (1985). When a defendant asserts the statute of limitations as an affirmative defense, the burden rests on the plaintiff to prove that his claims were timely filed. *State Farm Fire & Cas. Co. v. Darsie*, 161 N.C. App. 542, 547, 589 S.E.2d 391, 396-97 (2003), *disc. review denied*, 358 N.C. 241, 594 S.E.2d 194 (2004).

With respect to equitable estoppel, if the evidence gives rise to only one inference from undisputed facts, then the doctrine of equitable estoppel is a question for the court. *Keech v. Hendricks*, 141 N.C. App. 649, 653, 540 S.E.2d 71, 75 (2000). When, however, "there are facts in dispute as to the existence of the elements of equitable estoppel, the issue of estoppel is for the jury." *Friedland v. Gales*, 131 N.C. App. 802, 809, 509 S.E.2d 793, 798 (1998).

1. Equitable Estoppel

North Carolina courts "have recognized and applied the principle that a defendant may properly rely upon a statute of limitations as a defensive shield against 'stale' claims, but may be equitably estopped from using a statute of limitations as a sword, so as to unjustly benefit from his own conduct which induced a plaintiff to delay filing suit." *Id.* at 806, 509 S.E.2d at 796. The essential elements of equitable estoppel are:

"(1) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts. The party asserting the defense must have (1) a lack of knowledge and the means of knowledge as to the real facts in question; and (2) relied upon the conduct of the party sought to be estopped to his prejudice."

*Id.* at 807, 509 S.E.2d at 796-97 (quoting *Parker v. Thompson-Arthur Paving Co.*, 100 N.C. App. 367, 370, 396 S.E.2d 626, 628-29 (1990)). There need not be actual fraud, bad faith, or an intent to mislead or deceive for the doctrine of equitable estoppel to apply. *Duke Univ. v. Stainback*, 320 N.C. 337, 341, 357 S.E.2d 690, 692 (1987).

Here, viewed in the light most favorable to plaintiff, the evidence shows that by rerouting the true account statements and forwarding to plaintiff fabricated statements, Robert White intentionally prevented plaintiff from discovering that he had been injured and had a cause of action. *See Friedland*, 131 N.C. App. at 809, 509 S.E.2d at 798 (equitable estoppel supported by fact "defendant actively concealed his wrongful conduct"); *Bryant v. Adams*, 116 N.C. App. 448, 460, 448 S.E.2d 832, 838 (1994) (equitable estoppel applied when defendant "thwarted discovery efforts regarding specific facts"), *disc. review denied*, 339 N.C. 736, 454 S.E.2d 647 (1995).

Equitable estoppel may be asserted against Consolidated as a result of the acts of Robert White if he acted within the scope of his employment. *Hatcher v. Flockhart Foods, Inc.*, 161 N.C. App. 706, 709, 589 S.E.2d 140, 142 (2003) (holding that defendant could be equitably estopped from asserting statute of limitations by imputing agent's concealment to defendant), *disc. review denied*, 358 N.C. 234, 595 S.E.2d 150 (2004). As we have held, plaintiff has submitted sufficient evidence to permit a jury to impute Robert White's actions to Consolidated. In addition, a jury could, based on Consolidated's failure—after learning of Robert White's dishonesty—to notify plaintiff of Robert White's acts, to reassign plaintiff to another account executive, or to forward statements received for plaintiff's account, draw the inference that Consolidated "lulled [plaintiff] into a false sense of security" and it "breached the golden rule and fair play, justifying the entry of equity to prevent injustice." *Stainback*, 320 N.C. at 341, 357 S.E.2d at 693.

With respect to plaintiff's conduct, plaintiff offered evidence that he lacked actual knowledge of Robert White's thefts until April 2001 and that he had no reason to suspect that any misconduct was occurring with respect to his account because of the fraudulent statements that he received. Although Consolidated argues that plaintiff should have become suspicious and called Keyport, Provident, or Guardian, as they did in April 2001, we believe that question cannot be resolved on summary judgment. It requires drawing inferences from the evidence in favor of Consolidated, the moving party.

We hold that plaintiff was entitled to proceed to trial on his equitable estoppel claim. We stress, however, "that our holding by no means is intended to say that as a matter of law the defendant is equitably estopped from asserting the statute of limitations as a defense." *Keech*, 141 N.C. App. at 654, 540 S.E.2d at 75. We merely hold that the evidence raises a permissible inference that the elements of equitable

**WHITE v. CONSOLIDATED PLANNING, INC.**

[166 N.C. App. 283 (2004)]

estoppel are present, and estoppel, in this case, is a question of fact for the jury, upon proper instructions from the trial court. *Id.*

Despite our holding regarding equitable estoppel, we must still consider the parties' arguments regarding the statute of limitations since a jury could conclude that defendant should not be equitably estopped from asserting the statute of limitations. We address each cause of action challenged by Consolidated separately.

2. <u>Fraud</u>

**[8]** Under N.C. Gen. Stat. § 1-52(9) a claim for fraud must be filed within three years of the aggrieved party's "discovery . . . of the facts constituting the fraud[.]" Under this statute, "discovery" means either actual discovery or "when the fraud should have been discovered in the exercise of reasonable diligence." *Darsie*, 161 N.C. App. at 547, 589 S.E.2d at 396. Ordinarily, the question of when fraud, in the exercise of reasonable diligence, should be discovered is a question of fact for the jury. *Id.* at 548, 589 S.E.2d at 397. When, however, "the evidence is clear and shows without conflict that the claimant had both the capacity and opportunity to discover the fraud but failed to do so, the absence of reasonable diligence is established as a matter of law." *Id.*

Because evidence exists that plaintiff did not receive actual knowledge of Robert White's actions until April 2001, the primary question on appeal is whether plaintiff offered sufficient evidence to give rise to an issue of fact regarding the imputation of knowledge. As discussed in connection with equitable estoppel, the evidence presented by plaintiff would permit, although not require, a jury to conclude that as a result of Robert White's acts of concealment, plaintiff did not fail to exercise reasonable diligence.

In addition, our courts have held that a lack of reasonable diligence may be excused when the fraud was committed by a fiduciary. *Id.* at 551, 589 S.E.2d at 398. *See also Jennings v. Lindsey*, 69 N.C. App. 710, 715, 318 S.E.2d 318, 321 (1984) ("The existence and nature of a confidential relationship between the parties to a transaction may excuse a failure to use due diligence."). This principle does not apply, however, "[w]here something happens which reasonably excites suspicion that a fiduciary has failed to disclose all essential facts[.]" *Darsie*, 161 N.C. App. at 552, 589 S.E.2d at 399. Plaintiff's evidence supports a finding of a fiduciary relationship with Robert White and with Consolidated. The record contains no undisputed evidence

of an event that would necessarily have placed plaintiff on notice that Robert White and Consolidated were failing to disclose all essential facts. The record thus contains sufficient evidence to defeat summary judgment on plaintiff's fraud claim based on the statute of limitations.

### 3. Negligence

[9] Claims based on negligence are governed by N.C. Gen. Stat. § 1-52(5), specifying a three-year statute of limitations "for any other injury to the person or rights of another, not arising on contract and not hereafter enumerated." Although this provision, unlike the one governing fraud claims, does not include a "discovery rule," plaintiff contends that N.C. Gen. Stat. § 1-52(16) applies to his negligence claim. N.C. Gen. Stat. § 1-52(16) states, in pertinent part:

> Unless otherwise provided by statute, for personal injury or physical damage to claimant's property, the cause of action, except in causes of action [for professional malpractice], shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs. Provided that no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action.

N.C. Gen. Stat. § 1-52(16). Plaintiff asks us to construe this provision to cover his claim for purely pecuniary loss. We decline to do so.

By its terms, this provision applies only to claims for "personal injury or physical damage to claimant's property." This language is unambiguous and cannot be read as drawing within its scope pecuniary loss unrelated to personal injury or physical property damage. Plaintiff's proposed construction would read the word "physical" out of the statute. *See First Investors Corp. v. Citizens Bank, Inc.*, 757 F. Supp. 687, 691 (W.D.N.C. 1991) ("The North Carolina courts have clearly not expanded the meaning of 'physical damage to property' beyond the traditional meaning of the phrase. Its application has been limited to cases wherein latent damages have been discovered in the form of personal injuries or physical damage to property."), *aff'd*, 956 F.2d 263 (4th Cir. 1992).

Moreover, when the General Assembly has intended to include pecuniary loss within the scope of a discovery rule, it has done so expressly. Thus, in N.C. Gen. Stat. § 1-15(c) (2003) (emphasis added), the legislature provided:

> Except where otherwise provided by statute, a cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action: *Provided that whenever there is bodily injury to the person, economic or monetary loss, or a defect in or damage to property* which originates under circumstances making the injury, loss, defect or damage not readily apparent to the claimant at the time of its origin, and the injury, loss, defect or damage is discovered or should reasonably be discovered by the claimant two or more years after the occurrence of the last act of the defendant giving rise to the cause of action, suit must be commenced within one year from the date discovery is made . . . .

This provision was adopted in 1977, two years before enactment of N.C. Gen. Stat. § 1-52(16). Had the General Assembly intended to include "economic or monetary" loss—unrelated to personal injury or physical damage to property—in N.C. Gen. Stat. § 1-52(16), it would have done so.

Since we conclude that N.C. Gen. Stat. § 1-52(16) does not apply to plaintiff's negligence claim, we hold that plaintiff's negligence claim is barred by the statute of limitations, subject only to its claim of equitable estoppel. We note, however, that two of the Guardian loan transactions occurred on 15 December 1998 and 22 February 1999. Since plaintiff filed suit on 9 August 2001, negligence relating to those transactions is not time-barred under N.C. Gen. Stat. § 1-52(5).

### 4. Conversion

[10] The trial court dismissed plaintiff's conversion claim with regard to the Keyport annuities and granted summary judgment as to plaintiff's conversion claim based on the Provident annuity.[4] Conversion is " 'the unauthorized assumption and exercise of the right of ownership over the goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.' " *White v. White*, 76 N.C. App. 127, 129, 331 S.E.2d 703, 704 (1985) (quoting *Spinks v. Taylor*, 303 N.C. 256, 264, 278 S.E.2d 501, 506 (1981)). This cause of action is governed by the three-year statute of limitations in N.C. Gen. Stat. § 1-52(4) "[f]or taking,

---

4. Plaintiff's brief on appeal appears to limit his conversion claims to the annuities.

detaining, converting or injuring any goods or chattels, including action for their specific recovery."

As with N.C. Gen. Stat. § 1-52(5), governing negligence, the conversion statute of limitations does not expressly include a "discovery" clause. Plaintiff argues, however, that N.C. Gen. Stat. § 1-52(16) should apply to his conversion claim. Because, as we discussed above, plaintiff's claim that Robert White converted his funds does not amount to a claim for physical damage to property, we disagree. Robert White took plaintiff's funds; he did not physically damage them. *See First Investors Corp.*, 757 F. Supp. at 691 (holding that the statute of limitations for conversion is not subject to the discovery rule in N.C. Gen. Stat. § 1-52(16)).

Plaintiff relies primarily on *Aetna Casualty & Sur. Co. v. Anders*, 116 N.C. App. 348, 447 S.E.2d 504 (1994), a case involving an insurance company's subrogation claim against an employee who had embezzled money from the insured. In *Aetna*, the Court was not required to reach the issue involved in this case. The Court assumed, but did not expressly decide, that N.C. Gen. Stat. § 1-52(16) applied to the embezzlement claim and concluded that the plaintiff insurer's claim *was barred* under N.C. Gen. Stat. § 1-52(16). The Court was not required to address the issue here: whether N.C. Gen. Stat. § 1-52(16) restores a claim for conversion of funds otherwise barred by N.C. Gen. Stat. § 1-52(4).

In addition, it is not clear from *Aetna* that the Court applied the discovery rule. The Court noted that "defendant argues the last date on which defendant could have committed a tortious act giving rise to the cause of action was 11 November 1988, making the statute of limitations' expiration date 11 November 1991." *Aetna*, 116 N.C. App. at 350, 447 S.E.2d at 505. The Court then held: "Because the statute of limitations would have run on the laundry's right to file the cause of action on 11 November 1991, plaintiff lost its right to file the suit after that date." *Id.* at 350-51, 447 S.E.2d at 505. The Court thus appears to have held that the statute of limitations began running with the last tortious act and not with the discovery of the tort.

Alternatively, plaintiff, citing *White*, 76 N.C. App. at 129, 331 S.E.2d at 705, argues that his conversion claim did not accrue and the statute of limitations did not begin to run until he demanded the converted property and Consolidated or Robert White refused to return it. In *White*, the Court explained the scope of this principle: " 'Where there has been no wrongful taking or disposal of the goods, and the

**WHITE v. CONSOLIDATED PLANNING, INC.**

[166 N.C. App. 283 (2004)]

defendant has merely come rightfully into possession and then refused to surrender them, demand and refusal are necessary to the existence of the tort.' " *Id.* at 130, 331 S.E.2d at 705 (quoting *Hoch v. Young*, 63 N.C. App. 480, 483, 305 S.E.2d 201, 203 (statute did not begin to run until plaintiff stock owner demanded return from defendant who lawfully came into possession), *disc. review denied*, 309 N.C. 632, 308 S.E.2d 715 (1983)). Here, Robert White did not rightfully come into personal possession of plaintiff's funds; the "wrongful taking" and White's possession of the funds were simultaneous. The conversion occurred when Robert White exercised unlawful dominion over the funds—in other words, when Robert White withdrew the funds from the annuities without plaintiff's permission.

Plaintiff's conversion claims are, therefore, barred by the statute of limitations subject to plaintiff's claim for equitable estoppel.[5]

### Conclusion

In summary, we reverse the trial court's granting of the motion to dismiss as to plaintiff's claims for negligent hiring and breach of fiduciary duty. We affirm the dismissal of the claim for constructive fraud. With respect to the motion for summary judgment, we reverse the grant of summary judgment as to plaintiff's claims for fraud, conversion, negligence, and unfair and deceptive trade practices. Although we hold that the statute of limitations has run on plaintiff's claims for conversion and negligence, we hold that genuine issues of material fact exist as to plaintiff's claim of equitable estoppel and the application of the fraud statute of limitations.

Affirmed in part; reversed in part.

Judges McGEE and HUNTER concur.

---

5. Because the parties have only briefed the questions whether the discovery rule in N.C. Gen. Stat. § 1-52(16) applies to conversion causes of action and whether *White* and *Hoch* apply under the circumstances of this case, we do not express an opinion as to whether there is any other basis to apply a discovery rule to a conversion cause of action.