Poulos v. Poulos, 2015 NCBC 55.

STATE OF NORTH CAROLINA

COUNTY OF CUMBERLAND

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 1116

MARIA HONTZAS POULOS,　　　　　　)
　　　　　　　Plaintiff,　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
JOHN E. POULOS, M.D.; ICARIAN　　　)
PARTNERS, LLC; MEEJ, LLC; JEP　　　)
INVESTMENTS, LLC; OCIE F. MURRAY,　)
JR. as Trustee of the John E. Poulos Family　)
Trust; EMANUEL POULOS, as Named　)
Beneficiary of the John E. Poulos Family　)
Trust; and ELIZABETH POULOS, as Named　)
Beneficiary of the John E. Poulos Family　)
Trust,　　　　　　　　　　　　　　)
　　　　　　　Defendants.　　　　　　)

ORDER AND OPINION

THE CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases, comes before the Court pursuant to Rules 10, 12(b)(6), and 12(f) of the North Carolina Rules of Civil Procedure ("Rule(s)") and Rule 15 of the General Rules of Practice and Procedure for the North Carolina Business Court ("BCR"), on the Motion to Dismiss and Motions to Strike (collectively, "Motions") filed by Defendants John E. Poulos; Icarian Partners, LLC; MEEJ, LLC and JEP Investments, LLC.

THE COURT, having considered the Motions, briefs in support of and opposition[1] to the Motions, and other appropriate matters of record, CONCLUDES that the Motions should be GRANTED, in part, and DENIED, in part, for the reasons stated herein.

---

[1] The Court notes that Plaintiff failed to timely file her Memorandum of Law in Opposition to Defendants' Motions. The Memorandum was filed with this Court on May 22, 2015, long after the deadline required by this Court's rules. Nevertheless, the Court, in its discretion, will consider Plaintiff's Memorandum in deciding the Motions. The Court, however, cautions Plaintiff that further disregard of this Court's rules will be met with appropriate Court action.

## PROCEDURAL BACKGROUND

1. On February 11, 2015, Plaintiff initiated this action by filing a Complaint in the Cumberland County Superior Court ("the Complaint"). The Complaint alleges claims for fraud ("Count I"), Breach of Fiduciary Duty/Constructive Fraud ("Count II"), Fraudulent Transfers ("Count III"), Setting Aside the Trust ("Count IV"), and Accounting ("Count V").

2. On March 20, 2015, Defendants John E. Poulos, Icarian Partners, LLC, MEEJ, LLC and JEP Investments, LLC (collectively referred to as "Defendants") filed their Motion to Dismiss, Motions to Strike, Answer, Affirmative Defenses and Third Party Complaint, along with a Memorandum of Law in support of Defendants' Motions to Dismiss and Motions to Strike.

3. The parties have filed briefs supporting and opposing the Motions. The Motion to Dismiss and Motions to Strike are now ripe for determination.

## FACTS

The following facts relevant to the Motions are alleged in the Complaint:

4. Plaintiff Maria Hontzas Poulos ("Plaintiff") married Defendant John E. Poulos, M.D. ("Dr. Poulos") on January 25, 1992. Elizabeth Poulos ("Elizabeth") is the daughter of Plaintiff and Dr. Poulos, and of majority age. Emanuel Poulos ("Emanuel") is the son of Plaintiff and Dr. Poulos and is a minor.

5. Dr. Poulos formed Defendant John E. Poulos Family Trust ("the Family Trust") on February 11, 2011. Elizabeth and Emanuel are the sole beneficiaries of the Family Trust. Defendant Ocie F. Murray, Jr. is the trustee of the Family Trust.

6. Defendant Icarian Partners, LLC ("Icarian") is a North Carolina limited liability company. Icarian originally was owned by Dr. Poulos (50%) and Arthur Patelos ("Patelos") (50%). Between Icarian's formation in 2007 and 2010, Plaintiff acquired Patelos'

50% membership share. Icarian's 2010 and 2011 tax returns and Schedule K-1s show Plaintiff as a 50% owner of the LLC.

7.     Defendant MEEJ, LLC ("MEEJ") is a North Carolina limited liability company. Dr. Poulos, Plaintiff, Elizabeth and Emanuel are members of MEEJ, although the Complaint does not allege their respective ownership interests. Dr. Poulos is the manager of MEEJ.

8.     Defendant JEP Investments, LLC ("JEP") is a North Carolina limited liability company. Dr. Poulos and Plaintiff are members of JEP. Plaintiff was a 50% owner of JEP. Dr. Poulos is the manager of JEP.

9.     On June 21, 2013, Plaintiff filed a domestic complaint in Cumberland County against Dr. Poulos. Plaintiff is a dependent spouse and primary caregiver of the children, and she sought custody and support, presumably of the minor child, Emanuel. On July 15, 2013, Plaintiff filed a second domestic complaint against Dr. Poulos as a dependent spouse seeking post-separation support, alimony and equitable distribution of marital assets. Plaintiff and Dr. Poulos physically separated on July 12, 2013.

10.    During 2010 and 2011, Plaintiff and Dr. Poulos experienced serious marital problems. The Complaint alleges that starting in late 2010 or early 2011, Dr. Poulos "engaged in a scheme" to "fraudulently transfer, conceal and siphon away marital assets to defraud [Plaintiff] from receiving her fair share of marital and divisible property" in anticipation of filing for divorce from Plaintiff.[2]

11.    On February 11, 2011, Dr. Poulos purported to transfer a 90% membership interest in Icarian to the Family Trust. Dr. Poulos represented that he was the sole (100%) owner of Icarian at the time of the transfer.

---

[2] Compl. ¶ 23.

12. On February 11, 2011, Dr. Poulos also purported to transfer a 5% interest in Icarian to Plaintiff. Dr. Poulos represented that he was the sole (100%) owner of Icarian at the time of the transfer. The Complaint alleges, on information and belief, that Dr. Poulos forged Plaintiff's signature on the documents making the 5% transfer.[3]

13. On March 29, 2012, Dr. Poulos amended Icarian's articles of organization to change Icarian from a member-managed to a manager-managed LLC. He also purported to appoint himself the exclusive Icarian manager.

14. During 2011 and 2012, Dr. Poulos transferred a number of assets, including real estate and money in investment accounts, from MEEJ to Icarian.

15. On January 10, 2011, Dr. Poulos transferred several pieces of real estate from JEP to Icarian. On February 11, 2011, Dr. Poulos "fraudulently induced" Plaintiff to assign her 50% membership interest in JEP to Icarian.[4]

16. During 2012 and 2013, Dr. Poulos also transferred 50% membership interests he held in two other LLCs to Icarian.[5] Plaintiff alleges that Dr. Poulos' membership interests in the two LLCs were marital property.

17. Plaintiff alleges that Dr. Poulos took all of the above-described actions and made the transfers in furtherance of a "Fraudulent Scheme" in order to "avoid equitable distribution of at least half of these properties" to Plaintiff in the domestic actions.[6] Plaintiff admits that she signed documents effecting some, but not all, of the transfers of property of which she complains, but alleges that she "relied upon Dr. Poulos' fiduciary representations

---

[3] *Id.* ¶ 42.
[4] *Id.* ¶ 50.
[5] *Id.* ¶¶ 51-52. The two LLCs were AJ Properties of Fayetteville, LLC and Bear Plus One, LLC.
[6] *Id.* ¶ 58.

. . . that the purposes for the various transfers were for estate planning and to avoid the reach of medical malpractice liability."[7]

18.    Plaintiff alleges that she "placed actual trust and confidence in her husband, Dr. Poulos, to maintain the records of the LLCs and to properly engage in the business of the LLCs in her best interests."[8] She further alleges that "[i]n furtherance of the Fraudulent Scheme, Dr. Poulos treated the LLCs and the Trust as his alter egos" and "completely dominated and manipulated the LLCs and the Trust for his personal financial benefit."[9] Plaintiff alleges that Dr. Poulos owed her a fiduciary duty both as his wife and as a member of Icarian, MEEJ and JEP.[10]  Plaintiff "relied upon Dr. Poulos' fiduciary representations to her."[11]

## DISCUSSION

*Motion to Dismiss*

19.    The Court, in deciding a Rule 12(b)(6) motion, treats the well-pleaded allegations of the complaint as true and admitted. *Sutton v. Duke*, 277 N.C. 94, 98 (1970). However, conclusions of law or unwarranted deductions of fact are not deemed admitted. *Id.* The facts and permissible inferences set forth in the complaint are to be treated in a light most favorable to the nonmoving party. *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156 (1986). As our Court of Appeals has noted, the "essential question" raised by a Rule 12(b)(6) motion is "whether the complaint, when liberally construed, states a claim upon which relief can be granted on any theory." *Barnaby v. Boardman*, 70 N.C. App. 299, 302 (1984), *rev'd on other grounds*, 313 N.C. 565 (1985) (citations omitted). A Rule 12(b)(6) motion should be

---

[7] *Id.* ¶¶ 61-62.
[8] *Id.* ¶ 64.
[9] *Id.* ¶ 70.
[10] *Id.* ¶¶ 86, 87.
[11] *Id.* ¶ 62.

granted when the complaint, on its face, reveals (a) that no law supports the plaintiff's claim, (b) the absence of facts sufficient to form a viable claim, or (c) some fact which necessarily defeats the plaintiff's claim. *Jackson v. Bumgardner*, 318 N.C. 172, 175 (1986).

20.     In their Motions to Dismiss, Defendants seek dismissal only as to Plaintiff's claims for breach of fiduciary duty and constructive fraud (Count II), and only to the extent that Plaintiff seeks to make claims for a fiduciary relationship arising from her membership in Icarian, MEEJ, and JEP.  Defendants do not seek dismissal of Plaintiff's claims arising from the fiduciary relationship that existed between Plaintiff and Dr. Poulos as husband and wife.[12]

21.     Defendants contend that Plaintiff's claims for breach of fiduciary duty must be dismissed because Dr. Poulos did not owe Plaintiff a fiduciary duty as a member of Icarian or JEP, since Plaintiff alleges 50% ownership in both LLCs.[13]  Defendants further argue that, because Plaintiff does not allege her membership interest in MEEJ or in the other alleged LLCs, she cannot state a claim for breach of fiduciary duty against Dr. Poulos arising from Plaintiff's membership in those LLCs.

22.     In North Carolina, there usually is no fiduciary duty owed by one member of an LLC to another.  *Kaplan v. O.K. Techs., L.L.C.*, 196 N.C. App. 469, 473 (2009).  "Members of a limited liability company are like shareholders in a corporation in that members do not owe a fiduciary duty to each other or to the company." *Id.*  An exception to this rule is that a majority shareholder-member owes a duty to minority shareholder-members, and a minority shareholder may be permitted to bring an action in her individual capacity. *Id.; Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 406-408 (2000)   Plaintiff does not,

---

[12] North Carolina law recognizes a fiduciary duty between spouses. *See, e.g., Sidden v. Mailman*, 150 N.C. App. 373, 376 (2002).
[13] Defs' Mem. Supp. Mot. Dismiss 3.

however allege that she is a minority shareholder in any of the LLCs. Rather, she alleges 50% ownership in Icarian and JEP, with Dr. Poulos owning the other 50%. She has not alleged her ownership interest in MEEJ or the other LLCs.

23. North Carolina courts, however, have recognized that a 50% shareholder in a closely held corporation necessarily may be able to state an individual claim against another 50% shareholder where the plaintiff alleges "'a loss peculiar to himself' by reason of some special circumstances or special relationship" with the other 50% shareholder. *See Aubin v. Susi*, 149 N.C. App. 320, 325-26 (2002) (quoting *Outen v. Mical*, 118 N.C. App. 263 (1995)). In this case, Plaintiff contends that she has alleged just such peculiar damages arising from a special relationship. Plaintiff is not only a 50% shareholder in Icarian and JEP with Dr. Poulos, she also is Dr. Poulos's wife. This is certainly a sufficient allegation of a "special relationship" with another shareholder to satisfy the *Outen* standard. *See eg., Link v. Link*, 278 N.C. 181, 193 (1971) (finding that plaintiff-wife's transfer of corporate stock to defendant-husband, when plaintiff was inexperienced in business affairs, the marriage was dissolving, and defendant-husband was a manager of the corporation, provided "further circumstances" in support of a fiduciary relationship); *see generally Norman*, 140 N.C. App. 390 (discussing origins of shareholder's right to sue another shareholder in closely held corporation as arising, in part, from fact that shareholders in such corporations are often family members).

24. Plaintiff also has sufficiently alleged that she has suffered an injury peculiar to her and not common to all shareholders. Plaintiff alleges that Dr. Poulos' fraudulent transfer of marital assets by and between the various LLCs, and to the Family Trust, have deprived her of receiving the full and fair value of the support to which she may be entitled in the domestic relations matters. Plaintiff allegedly suffered this injury not because of her status as a shareholder, but because she is Dr. Poulos' wife and the corporate transfers at issue involve marital assets. Plaintiff has sufficiently pleaded that she has or will suffer a

peculiar loss because of her special relationship with the other 50% shareholders in Icarian and JEP to survive a motion to dismiss. Accordingly, Defendants' motion to dismiss Plaintiff's claim for breach of fiduciary duty arising from her membership in Icarian and JEP should be DENIED.

25. To the extent that Plaintiff's claim for breach of a fiduciary relationship arises out of her membership in MEEJ or the other LLCs alleged in the Complaint, the motion is GRANTED, without prejudice for Plaintiff to file with the Court on or before June 12, 2015, an amended complaint setting forth Plaintiff's ownership interests in MEEJ and the other LLCs.

26. Defendants also move for dismissal of Plaintiff's claim for constructive fraud. Claims for breach of fiduciary duty and constructive fraud differ in that in order to state a claim for constructive fraud, the plaintiff must allege that the defendant sought to benefit himself by his misconduct. *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 294 (2004). "To assert a claim of constructive fraud, plaintiff must allege: '(1) a relationship of trust and confidence, (2) *that the defendant took advantage of that position of trust in order to benefit himself,* and (3) that plaintiff was, as a result, injured . . . .'" *Ellison v. Alexander*, 207 N.C. App. 401, 408 (2010) (citations omitted); *White,* 166 N.C. App. at 294.

27. Plaintiff has alleged that Dr. Poulos engaged in the "Fraudulent Scheme" to transfer marital properties in such a way as to deprive Plaintiff of her "fair share" of the marital assets upon her divorce from Dr. Poulos. While she does not allege specific facts establishing how Dr. Poulos would benefit financially from the transfers of assets,[14] the Court concludes that the Complaint sufficiently alleges that Dr. Poulos sought to benefit himself in the domestic relations cases and thereby supports a cause of action for constructive fraud.

---

[14] In fact, the many alleged transfers of property to the Family Trust would seem to have been for the benefit of Elizabeth and Emanuel, the sole beneficiaries of the Family Trust, rather than for the direct benefit of Dr. Poulos.

Accordingly, Defendants' motion to dismiss Plaintiff's claim for constructive fraud should be DENIED.

*Motion to Strike*

28. Defendants also have moved to strike the "Summary of Case" and various other allegations in the Complaint. Rule 12(f) of the North Carolina Rules of Civil Procedure, allows the court to strike "from any pleading any insufficient defense or any redundant, irrelevant, immaterial, impertinent, or scandalous matter." N.C.R. Civ. P. 12(f) (2005). "A motion to strike an answer is addressed to the sound discretion of the trial court and its ruling will not be disturbed absent an abuse of discretion." *Carpenter v. Carpenter*, 189 N.C. App. 755, 759 (2008) (citation omitted).

29. Defendants move to strike the Summary of Case set out at the beginning of the Complaint on the grounds that is violates Rule 10(b). Rule 10(b) provides that "[a]ll averments of claim of defense shall be made in numbered paragraphs, the contents of each of which be limited as far as practicable to a statement of a single set of circumstances." Defendants argue that the Summary of Case, consisting of four unnumbered paragraphs covering an entire page, fail meet the requirements of 10(b) in that they are "averments of claim" but are not set out in numbered paragraphs. Defendants further argue, and Plaintiff concedes, that the allegations in the Summary of Case are restated elsewhere in the numbered allegations of the Complaint.[15] Plaintiff, however, contends that the Summary of Case is merely "a snapshot of claims and allegations made in a long and complex document" and is not intended to state claims.[16]

30. At a minimum, the Summary of Case is "redundant" of allegations contained elsewhere in the Complaint, and creates confusion as to Defendants' obligation to respond to

---

[15] Pl.'s Mem. Opp. 10
[16] *Id.*

it in their Answer. The Court concludes, in its discretion, that Defendants are correct, and that the Summary of Case fails to meet the requirements of Rule 10(b) and should be stricken from the Complaint. Defendants' motion to strike the Summary of Case should be GRANTED.

31. Defendants' next move the Court to strike Plaintiff's attempts to adopt by reference into the Complaint pleadings, allegations, and discovery responses from the domestic relations cases between Plaintiff and Dr. Poulos because they violate Rule 10(c). Specifically, in paragraphs 21 of the Complaint, Plaintiff alleges that "[j]udicial admissions and relevant and competent evidence and pleadings from the court files in the custody case and support case are incorporated by reference," and paragraph 22 alleges that "[d]uring 2010 and 2011, Maria and Dr. Poulos experienced serious marital problems, as more fully set forth in the custody case and the support case pleading and materials of record." In paragraph 67 of the Complaint, Plaintiff alleges that she is adopting "Dr. Poulos' responses to discovery requests in the support case."

32. Rule 10(c) provides that "[s]tatements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion in the action."[17] Defendant contends that the rule is limited to adopting only pleadings that have been filed in the same lawsuit, and not pleadings that have been filed in other lawsuits, and this appears to the Court to be the correct interpretation of Rule 10(c). *See* G. Gray Wilson, *North Carolina Civil Procedure* § 10-3 (3d. 2014) ("A party may not adopt by reference pleadings or motions from another action."). The Court further notes that Plaintiff goes well beyond merely attempting to incorporate or adopt pleadings from other actions, and appears

---

[17] Rule 10(c) also permits a party to adopt "any written instrument which is [made] an exhibit to a pleading." None of the pleadings or materials referenced in paragraphs 21, 22 and 68 are attached to the Complaint.

to attempt to incorporate discovery materials and evidence from the domestic relations actions. Rule 10(c) clearly does not provide for adoption of anything other than "pleadings." Based on the foregoing, the Court concludes in its discretion that Defendants' motion to strike paragraphs 21, 22 and 67 of the Complaint should be GRANTED.

33. Finally, Defendants move to strike the allegations in paragraphs 25 – 28, and paragraph 68 on the grounds that they are "irrelevant and scandalous."[18] Paragraphs 25 and 28 allege that Dr. Poulos engaged in an "extramarital affair," and that the affair and the couple's "marital problems" was Dr. Poulos' motivation in engaging in the "Fraudulent Scheme." Paragraphs 26 and 27 detail Dr. Poulos' alleged "strange behaviors" during the time of the alleged affair including "incessant grooming," "public drunkenness" and the use of medications. The Court has reviewed the allegation, and concludes that the allegations in paragraphs 25 and 28 go directly to the background of and motivation for Dr. Poulos' alleged fraudulent conduct and are relevant to the action and not "scandalous". On the other hand, paragraphs 26 and 27 do not contain allegations that are necessary to support or advance Plaintiff's claims in this lawsuit, and are unnecessarily derogatory of Dr. Poulos. Accordingly, the Court concludes in its discretion that Defendants' motion to strike paragraphs 25 and 28 should be DENIED, and the motion to strike paragraphs 26 and 27 should be GRANTED.

34. In paragraph 68 of the Complaint, Plaintiff alleges that Dr. Poulos has violated "multiple court orders" to produce discovery in the domestic relations actions. Again, the Court concludes that this allegation is irrelevant, immaterial and unnecessary to the claims alleged in the Complaint, in its discretion, that Defendants' motion to strike paragraph 68 should be GRANTED.

---

[18] Defs' Mem. Supp. Mot. Dismiss 9.

CONCLUSION

THEREFORE, IT IS ORDERED THAT:

35.     Defendants' Motion to Dismiss is GRANTED, in part, and DENIED, in part.

        a.      The Motion to Dismiss is GRANTED, without prejudice, insofar as Plaintiff's allegations for breach of fiduciary duty rely upon her ownership interest in MEEJ, AJ Properties of Fayetteville, LLC, and Bear Plus One, LLC. On or before June 12, 2015, Plaintiff may file with the Court an amended complaint setting forth Plaintiff's interests in these LLCs.

        b.      Except as granted herein, the Motion to Dismiss is DENIED.

36.     Defendants' Motions to Strike are GRANTED, in part, and DENIED, in part.

        a.      The Motions to Strike are GRANTED as to the "Summary of the Case" and paragraphs 21, 22, 26, 27, 67, and 68 of the Complaint.

        b.      The Motions to Strike are DENIED as to paragraphs 25 and 28 of the Complaint.

SO ORDERED, this the 2nd day of June, 2015.


                                         /s/ Gregory P. McGuire
                                        Gregory P. McGuire
                                        Special Superior Court Judge
                                          for Complex Business Cases