Fiske v. Kieffer, 2016 NCBC 22.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15-CVS-11575

JOHN FISKE, JEFFREY SMALL,
NABIL BOUTROS AND STEPHEN
SMALL,

          Plaintiffs,

          v.

MARC KIEFFER,

          Defendant.

)
)
)
)
)
)
)
)
)
)

**OPINION AND ORDER**

THIS CAUSE was designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. §7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases.

THIS MATTER comes before the Court upon Plaintiff's Motion to Dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)").

THE COURT, after considering the Motions, the briefs in support and in opposition to the Motion for Judgment, and other appropriate matters of record, FINDS and CONCLUDES as stated herein.

    *Raynor Law Firm, PLLC, by Kenneth R. Raynor, Esq. for Plaintiffs.*

    *James, McElroy & Diehl, P.A., by Fred B Monroe, Esq. for Defendant.*

McGuire, Judge.

*A.    FACTUAL AND PROCEDURAL BACKGROUND.[1]*

1.    Plaintiffs and Defendant constitute all of the Members of three North Carolina limited liability companies, including Makhn Gelt, LLC.  The parties' respective ownership interests are structured as follows: Marc Kieffer: 40%, Stephen Small: 20%, Nabil Boutros: 20%, Jeffrey Small: 10%, and John Fiske: 10%.[2]  The parties entered into a written Operating Agreement for Makhn Gelt.[3]

2.    Initially, the Managers of the LLCs were Plaintiff Stephen Small and Defendant.  On or about January 6, 2015, Plaintiffs terminated Defendant as a Manager of the LLCs.[4]  At the time, Defendant was owed approximately $18,000 in back pay for his work as a Manager.  In addition, Plaintiffs indicated that the LLCs, specifically Makhn Gelt, would make a severance payment to Defendant, but the payment was not made.[5]

3.    Plaintiffs and Defendant engaged in numerous negotiations over the sale of their respective interests in the LLCs to one another, but could not come to an agreement.[6]  The Plaintiffs and Defendant remain in business together.[7]

4.    On or about April 6, 2015, RJG Restaurant Group, LLC, a third-party, delivered a non-binding letter of intent concerning the potential purchase of the assets of the LLCs.[8]  Defendant investigated the proposal and was concerned that "its purpose was [ ] to force a sale of the business on terms that were not favorable to Defendant."[9]  Defendant also

---

[1] Additional factual background is contained in this Court's Opinion and Order issued on February 16, 2016.
[2] Def.'s Countercl. ¶ 8.
[3] *Id.* Exh. D.
[4] *Id.* ¶ 14.
[5] *Id.*
[6] *Id.* ¶¶ 15 -17.
[7] *Id.* ¶ 17.
[8] *Id.* ¶ 19.
[9] *Id.* ¶ 20.

"desired to maintain his investment in the LLCs."[10] Defendant objected to the sale and it was not completed.[11]

5. Section 2.3(b) of the Makhn Gelt Operating Agreements provides in pertinent part as follows:

> Operating Deficit Loans. If the majority of Interest Holders determine from time to time that an Operating Deficit has occurred or is about to occur, they may give written notice (the "Capital Call") to each Interest Holder, . . .
>
> "Operating Deficit" shall mean the excess of (x) all expenditures and obligations incurred by, or expected to occur or be incurred by, the LLC in the normal course of its business, including without limitation debt service on LLC obligations; over (y) the gross receipts to the LLC from all sources, including without limitation Capital Contributions and reserves from prior periods.
>
> Any Interest Holder may, but shall not be required to, contribute to the capital of the LLC the total amount of capital needed as set forth in the Capital Call, multiplied by the Interest Holder's Residual Interest. …
>
> If the principal and interest outstanding under an outstanding Operating Deficit Loan is not repaid in full within one (1) calendar year after the Operating Deficit Loan is made, then any Funding Interest Holder may, at any time after the expiration of the one (1) year period, elect to convert the Operating Deficit Operating Loan into an additional Interest in the LLC . . . [12]

6. On or about April 27, 2015, Plaintiffs issued a Notice of an Operating Deficit for Makhn Gelt, LLC (the "Notice") to all of Makhn Gelt's members requesting a $100,000 capital call be made by May 30, 2015.[13] Plaintiffs did not invite Defendant to participate in any meeting concerning the need to issue the Notice.[14] Defendant has not alleged whether any of the Plaintiffs elected to make a capital contribution in response to the Notice. The Notice itself states that the LLC made an "informal" capital call and that "some of the interest

---

[10] *Id.*
[11] Answer, ¶ 13.
[12] Def.'s Countercl., Exh. D.
[13] *Id.* ¶ 21, Exh. A.
[14] *Id.* ¶ 22.

holders have responded".[15]  In his brief, however, Defendant claimed that he elected not to contribute to the capital call.[16]

7.      Defendant alleges that "[u]pon information and belief," at the time of the capital call, there existed sufficient cash on hand, or financing available, to meet the operational needs of Mahkn Gelt, LLC, and there was not an operating deficit that would support a notice for a capital call at that time.[17]  Defendant further alleges that "upon information and belief", Plaintiffs issued the capital call for the improper purpose of (a) "eventually" diluting Defendant's ownership interest in Mahkn Gelt, (b) retaliating against Defendant for his objection to the sale to RJG, and/or (c) gaining an advantage over Defendant in negotiating a sale of the LLCs' assets.[18]

8.      On June 17, 2015, Plaintiffs filed this lawsuit against Defendant.  On June 23, 2015, Plaintiffs filed their Amended Complaint.  The Amended Complaint sought a declaratory judgment, asking the Court "to determine whether the Manager of" each LLC is "allowed to sell all of the assets of" the LLC "with approval of only a majority of the members of the company."

9.      On August 27, 2015, Defendant filed his Answer, Defenses and Counterclaims. Defendant raised counterclaims for declaratory relief (First Cause of Action), breach of fiduciary duty/constructive fraud (Second Cause of Action), and breach of contract (Third Cause of Action).

10.      On October 26, 2015, Plaintiffs filed their Motion to Dismiss and Reply to Counterclaim.   Plaintiffs Motion to Dismiss sought dismissal of Defendant's second

---

[15] Def.'s Countercl., Exh. A.
[16] Pl.'s Mem. Supp. Mot. Dismiss, p. 2.
[17] Def.'s Countercl. ¶ 46.
[18] Id. ¶ 47.

counterclaim for breach of fiduciary duty and constructive fraud and third counterclaim for breach of contract.

11.     On November 12, 2015, Defendant filed a Voluntary Dismissal with Prejudice of their second counterclaim for breach of fiduciary duty and constructive fraud against Stephen Small "for actions, or omissions, solely in his capacity as Manager of Makhn Gelt, LLC." Defendant did not dismiss his claims for breach of fiduciary duty and constructive fraud against Stephen Small "arising out of actions or omissions conducted in his individual capacity, or as a member of Makhn Gelt, LLC, while either acting individually of in concert with other Plaintiffs."

## ANALYSIS

12.     The Court, in deciding a Rule 12(b)(6) motion, treats the well-pleaded allegations of the complaint as true and admitted. *Sutton v. Duke,* 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970). However, conclusions of law or unwarranted deductions of fact are not deemed admitted. *Id.* "Absent specific, supportive, factual allegations, the court need not accept as true general conclusory allegations of the elements of a cause of action for purposes of a motion to dismiss." *Global Promotions Grp., Inc. v. Danas Inc.*, 2012 NCBC LEXIS 40, *12 (N.C. Super. Ct. 2012). The facts and permissible inferences set forth in the complaint are to be treated in a light most favorable to the nonmoving party. *Ford v. Peaches Entm't Corp.,* 83 N.C. App. 155, 156, 349 S.E.2d 82, 83 (1986). As our Court of Appeals has noted, the "essential question" raised by a Rule 12(b)(6) motion is "whether the complaint, when liberally construed, states a claim upon which relief can be granted on any theory." *Barnaby v. Boardman,* 70 N.C. App. 299, 302, 318 S.E.2d 907, 909 (1984) *rev'd on other grounds,* 313 N.C. 565, 330 S.E.2d 600 (1985) (citations omitted). A Rule 12(b)(6) motion should be granted when the complaint, on its face, reveals (a) that no law supports the

plaintiff's claim, (b) the absence of facts sufficient to form a viable claim, or (c) some fact which necessarily defeats the plaintiff's claim. *Jackson v. Bumgardner,* 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986).

### a. Breach of Fiduciary Duty Claim (Second Cause of Action)

13. Defendant alleges that the Plaintiffs collectively "constitute a majority of the controlling owners, and interest holders, of Mahkn Gelt, LLC", and that "they acted in concert and as a group to control …, … Makhn Gelt, LLC."[19] Defendant alleges that the plaintiffs collectively owed him a fiduciary duty since they were acting as a majority of the LLC's ownership.[20] Defendant contends that Plaintiffs voted their interests together to make the capital call for the improper purpose of intimidating and retaliating against him for rejecting their buy-out proposals and stymieing the RJG deal.[21] Specifically, Defendant alleges Plaintiffs ordered the capital call to dilute his interest in the LLCs, to pressure him to sell his interest in the LLCs, or to force him to cave into a one-sided buy-out agreement with RJG.[22] The capital call allegedly was unnecessary because Makhn Gelt's cash flow and access to other financial resources were sufficient to preclude an operating deficit as defined in its Operating Agreement. Defendant asks this Court to rescind the capital call, or in the alternative, to award him damages in an amount to be determined at trial.

14. In order to establish a claim of breach of fiduciary duty, a plaintiff must show (1) the existence of a fiduciary duty, and (2) that the fiduciary failed to "act in good faith and with due regard to plaintiff's interests." *White v. Consolidated Planning Inc.,* 166 N.C. App. 283, 293, 603 S.E.2d 147, 155 (2004). A fiduciary relationship arises when "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good

---

[19] Def.'s Countercl. ¶ 43.
[20] *Id.* ¶¶ 43-44.
[21] *Id.* ¶ 47.
[22] *Id.*

faith and with due regard to the interests of the one reposing confidence." *Harrold v. Dowd*, 149 N.C. App. 777, 784, 561 S.E.2d 914, 919 (2002). Such a fiduciary relationship "extends to any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side, and *resulting domination and influence on the other*." *Dalton v. Camp*, 353 N.C. 647, 652, 548 S.E.2d 704, 707-708 (2001) (emphasis in original) (internal citations omitted). Finding this type of fiduciary relationship requires an intense factual inquiry and the standard is demanding. "Only when one party figuratively holds all the cards—all the financial power or technical information, for example—have North Carolina courts found that the 'special circumstance' of a fiduciary relationship has arisen." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 347-48 (4th Cir. 1998).

15. Under the North Carolina law, members of an LLC are treated like corporate shareholders and managers are similar to directors. *Kaplan v. O.K. Techs., L.L.C.*, 196 N.C. App. 469, 473-74, 675 S.E.2d 133, 137 (2009). "Members of a limited liability company are like shareholders in a corporation in that members do not owe a fiduciary duty to each other or to the company." *Id.* at 473. An exception, however, is that a holder of a majority interest who exercises control over the LLC owes a fiduciary duty to minority interest members. *Id.*; *HCW Ret. & Fin. Servs., LLC v. HCW Emple. Benefit Servs., LLC*, 2015 NCBC LEXIS 73, \*46 (N.C. Super. Ct. 2015); *Island Beyond, LLC v. Prime Capital Grp., LLC*, 2013 NCBC LEXIS 48, \*15 (N.C. Super. Ct. 2013) ("In some instances, a majority member owes the minority members a fiduciary duty that prevents the use of the majority vote to harm the minority.").

16. Here, none of the individual Plaintiffs held a majority interest in Makhn Gelt. Defendant instead contends that the four Plaintiffs collectively held 60% of the ownership in the LLC, and that "they acted in concert and as a group" in exercising that 60% interest as a majority. The Court acknowledges that North Carolina courts have recognized the possibility

that a fiduciary duty could arise where multiple minority shareholders in a corporation acted in concert to control the corporation. *See, e.g., Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 407, 537 S.E.2d 248, 260 (2000). The holding in *Nash Johnson*, however, has not been extended to interest holders in an LLC.  As this Court has discussed in previous opinions, there probably is sound reason for this since a limited liability company is fundamentally different from a corporation in several ways, including the ability of parties to an LLC operating agreement to alter statutory default rules. *See Blythe v. Bell*, 2013 NCBC LEXIS 17, *13-18 (N.C. Super. Ct. 2013) (declining to extend the *Nash Johnson* line of cases to LLCs "in no small part because of the freedom to contract granted to LLC members to obtain minority protections not available to shareholders of the closely-held corporation").

17.     More significantly for purposes of determining this motion, the allegations in Defendant's counterclaims establish that Plaintiffs were not in a position of "domination and influence" over Defendant and were not in a fiduciary relationship with Defendant.  First, Defendant expressly alleges the Makhn Gelt Operating Agreement provided him with protections from domination by Plaintiffs since Defendant held a 40% ownership interest in the LLC and could block the Supermajority Vote necessary to take many significant corporate actions. [23]  Second, Defendant demonstrated that he was not powerless to protect his interests by preventing the sale the assets of Makhn Gelt (as well as the other two LLCs) to RJG. While Defendant was unhappy with Plaintiffs for making the capital call, he was not required to and did not make a capital contribution.  In addition, Defendant has alleged only that he believes Plaintiffs' purpose in making the capital call was to dilute his ownership interest in Makhn Gelt, but has not alleged that his interest actually has been diluted by Plaintiffs'

---

[23] Def.'s Countercl.¶¶ 28 - 34, Exh. D; the Operating Agreement defines a "Supermajority Vote" as "the written vote, consent or approval of at least seventy five per cent [*sic*] (75%) in Interest of the Members."

actions. The Operating Agreement, to which Defendant agreed, expressly provides that "the majority of interest holders" in Makhn Gelt may determine if a capital call is needed. Defendant cannot claim he was owed a fiduciary duty merely because the Plaintiffs' exercised their rights under the Operating Agreement and outvoted him. *BOGNC, LLC v. Cornelius NC Self-Storage, LLC*, 2013 NCBC LEXIS 22, *1 (N.C. Super. Ct. 2013); *HCW Ret. & Fin. Servs., LLC v. HCW Emple. Benefit Servs., LLC*, 2015 NCBC LEXIS 73, *46-47 (N.C. Super. Ct. 2015).

18.     Ultimately, the Court concludes that the allegations in the counterclaims fail to support Defendant's claim that Plaintiffs' owed him a fiduciary duty. Accordingly, Plaintiffs' motion to dismiss Defendant's claim for breach of fiduciary duty should be GRANTED.

### b.     Constructive Fraud Claim (Second Cause of Action).

19.     "To survive a motion to dismiss, a cause of action for constructive fraud must allege (1) a relationship of trust and confidence, (2) that the defendant took advantage of that position of trust in order to benefit himself, and (3) that plaintiff was, as a result, injured." *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 294, 603 S.E.2d 147, 156 (2004). "Constructive fraud arises where a confidential or fiduciary relationship exists." *Watts v. Cumberland County Hospital System, Inc.*, 317 N.C. 110, 115, 343 S.E.2d 879, 884 (1986).

20.     The Court has concluded that Plaintiffs did not owe Defendant has failed to allege that Plaintiffs owed him a fiduciary duty. Accordingly Defendant's claim for constructive fraud must fail. *Talisman Software, Sys. & Servs. v. Atkins*, 2015 NCBC LEXIS 108, *12-13 (N.C. Super. Ct. 2015) (holding where defendant did not allege facts that would establish plaintiff owed him a fiduciary duty, a counterclaim for constructive fraud must be dismissed); citing *Kingsdown, Inc. v. Hinshaw*, 2015 NCBC LEXIS 30, *26 (N.C. Super. Ct.

2015); *Maurer v. SlickEdit, Inc.*, 2005 NCBC LEXIS 2, *31 (N.C. Super. Ct. 2005). Plaintiffs' motion to dismiss Defendant's claim for constructive fraud should be GRANTED.

### c. Breach of Contract (Third Cause of Action).

19. The Defendant contends that the Plaintiffs breached Section 2.3(b) of the Operating Agreement by issuing a capital call when an "operating deficit", as defined in the Operating Agreement, did not exist.[24] Section 2.3(b) defines an "operating deficit" as "the excess of (x) all expenditures and obligations incurred by, or expected to occur or be incurred by, the LLC in the normal course of business, including without limitation debt service on LLC obligations; over (y) the gross receipts to the LLC from all sources, including without limitation Capital Contributions and reserves from prior periods."[25] Defendant alleges that based on "the scant financial information provided," no operating deficit existed.[26] Defendant further alleges that he "requested bank statements, and other documents" but Plaintiffs "refused to provide detailed financial information."[27] Nevertheless, in Defendant's brief, he states that "there were sufficient funds on hand to operate Makhn Gelt, LLC at the time of the capital call."[28]

20. "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill,* 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000) (internal citations omitted).

21. The Plaintiffs contend that they did not breach the Operating Agreement because the Operating Agreement permits a majority vote to determine when an "operating deficit" has occurred or is about to occur, and Plaintiffs determined that there was a deficit.[29]

---

[24] Def.'s Countercl. ¶ 52.
[25] Makhn Gelt, LLC, Op. Ag., § 2.3(b).
[26] Def.'s Countercl. ¶ 52.
[27] Def.'s Countercl. ¶ 52.
[28] Def.'s Br. Opp. Pl.'s Mot. Dismiss, p. 8.
[29] Pl.'s Mem. Supp. Mot. Dismiss, p. 6.

Section 2.3(b) states, "[i]f the majority of Interest Holders determine from time to time that an Operating Deficit has occurred or is about to occur" they may issue a capital call. Section 2.3(b), however, also provides that an "Operating Deficit *shall mean*" a deficit as determined by applying the express formula cited above.[30] The Court concludes that section 2.3(b) is unambiguous, and requires that a capital call can only be made when an "operating deficit" exists as determined by the formula contained in that section, and not simply in the judgment of a majority of the interest holders of the LLC. Viewing the pleaded facts in a light most favorable to the Defendant, [31] he has alleged facts that would support a claim for breach of contract. Therefore, the Court concludes that Plaintiffs' motion to dismiss Defendant's breach of contract claim should be DENIED.

22. In his brief, Defendant also asserts that Plaintiffs' action constitute a breach of the implied covenant of good faith and fair dealing.[32] This claim, however, was not pleaded in Defendant's counterclaims, and therefore the Court DISMISSES without prejudice Defendant's claim for breach of the implied covenant of good faith and fair dealing. *Mohammed v. Daniels*, 2015 U.S. Dist. LEXIS 13774, *8 n. 2 (E.D.N.C. Feb. 4, 2015) ("To the extent plaintiff attempts to raise new claims in his responses to defendants' motions to dismiss, those claims are not properly before the court and will not be considered.").

THEREFORE, IT IS ORDERED THAT:

23. Plaintiff's Motion to Dismiss Defendant's Second Cause of Action for breach of fiduciary duty is GRANTED.

24. Plaintiff's Motion to Dismiss Defendant's Second Cause of Action for constructive fraud is GRANTED.

---

[30] Makhn Gelt, LLC, Op. Ag., § 2.3(b) (emphasis added).
[31] *Ford v. Peaches Entm't Corp.,* 83 N.C. App. 155, 156 (1986).
[32] Def.'s Br. Opp. Pl.'s Mot. Dismiss, p. 9.

25.     Plaintiff's Motion to Dismiss Defendant's Third Cause of Action for breach of contract is DENIED.

26.     Defendant's assertion of a breach of the implied covenant of good faith and fair dealing is DISMISSED without prejudice.

This the 9th day of March, 2016.

/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge for
Complex Business Cases